The People of the State of New York, Respondent, *v.*
Mary L. Fisher et al., Appellants.

1. Eminent Domain — Canal Law — Appropriation of Land for
Canal Purposes — Title. Under the provisions of the Canal Law (L.
1894, ch. 338) the title to all real property permanently appropriated for
the use of the canals of the state is vested in the people, and the question
as to what lands, structures or waters are necessary and as to their tem-
porary or permanent appropriation is left to the judgment of the super-
intendent of public works, who may enter upon and take possession of
such lands as in his judgment may be necessary. Provision is also made
for an accurate survey and map of the land appropriated, for filing the
same and service thereof upon the owner, and it is expressly provided
(§ 70) that "From the time of such service, the entry upon and appro-
priation by the state of the real property described in such notice, for the
uses and purposes of the canals, shall be deemed complete, and such
notice shall be conclusive evidence of such entry and appropriation and
of the quantity and boundaries of the lands appropriated."

2. Same — When State Acquires Title in Fee to Lands Taken
for Canal Purposes — Trespass. In an action to recover for trespass
on state lands, it appeared that theretofore by reason of the erection by the
state of a dam across a stream, private lands had been overflowed and for
the damages thereby occasioned a claim had been filed with the Board of
Claims which resulted in an award in favor of the claimant, the decision of
the board containing a finding that the state "took and permanently
appropriated to its use" land and water of the claimant as appears
from a map and survey. By reason of the subsequent heightening of
such dam more lands belonging to the same party were overflowed, which
resulted in a second claim for damages and a judgment in favor of the
claimant "for damages to lands and for the permanent appropriation of "
the lands therein specifically described in accordance with a right-angle
survey theretofore made around the land overflowed by the water in the
dam. Before the last award was paid and after the passage of the Canal
Law, the state engineer made an accurate survey and map of the lands
bounded by the previous survey, which was duly certified by him to be
correct, and the superintendent of public works annexed thereto a certifi-
cate stating that by virtue of the authority vested in him by the provi-
sions of the Canal Law he thereby "permanently appropriated for the
use of the state for canal purposes " the lands of the claimant as mentioned
and described in the annexed survey and map, which map, survey and
certificate were afterwards filed in the office of the state engineer and a
notice of the filing thereof, specifically describing the lands appropriated,
served upon the claimant. *Held,* that the fee of all the lands included
within the survey and map as filed was acquired by the state, notwith-

standing the fact that more land was included therein than was actually overflowed by the dam, and the entry of the original owner on lands between the flow line and the line of the survey and the cutting and removal of trees therefrom constituted a trespass.

3. Forest, Fish and Game Law — When Lands Taken for Canal Purposes Constitute Part of Forest Preserve. An action to recover damages for the trespass or waste on said lands is properly brought under the provisions of section 222 of the Forest, Fish and Game Law (L. 1900, ch. 20, amd. L. 1905, ch. 285) since the land in question is plainly included within the limits of the forest preserve as prescribed in section 216 of said act.

*People* v. *Fisher*, 116 App. Div. 677, affirmed.

(Argued December 4, 1907; decided January 14, 1908.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 21, 1907, affirming a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*C. D. Adams* for appellants. The overflow provided for by the act of 1830 gave the state only a permanent easement. (105 N. Y. 246; 68 N. Y. 591.) The state, by the legislature, can declare what interest is necessary for the public use, whether a fee or an easement. In the absence of such a declaration, only such interest is taken as · is necessary for the particular use. (Cooley on Const. Lim. *528, 557, 558; Potter's Dwarris on Stat. 381, 383, 386, 394; Mills on Em. Dom. §§ 45, 46, 50, 90, 93; 66 N. Y. 569; 130 N. Y. 249; 128 N. Y. 408; 108 N. Y. 375.) There was no public use designated in any statute for which the belt of timber land around the pond could have been taken by the superintendent of public works in 1898. (105 N. Y. 246; 120 N.Y. 228; 127 N. Y. 190.) Redress for all injuries to any part of the 2,754 acres in which the state has any interest must be under the Canal Law, and not under the Forest Law. (Cooley on Const. Lim. *540; Mills on Em. Dom. §§ 45, 46; Potter's Dwarris on Stat. 386; L. 1897, ch. 220; L. 1901, ch. 94.)

No estoppel can be claimed from any expressions contained in the claims as filed or the awards or the receipts, which at the most are legal misnomers or unwarranted conclusions of law erroneously used by way of description. (42 Barb. 79; 2 N. Y. 19; 128 N. Y. 270.)

*John K. Ward* for respondent.   The permanent appropriation of the 2,754 acres of defendant Fisher's land by the superintendent of public works was a valid taking, authorized by statute, and vested the fee in the People of the state of New York. (*Rogers* v. *Bradshaw*, 20 Johns. 740; *Baker* v. *Johnson*, 2 Hill, 345; *Rexford* v. *Knight*, 15 Barb. 642; 11 N. Y. 314; *Dingley* v. *City of Boston*, 100 Mass. 544; *Lansing* v. *Smith*, 8 Cow. 149; *B. P. Comm.* v. *Armstrong*, 45 N. Y. 242; *Eldridge* v. *City of Binghamton*, 120 N. Y. 314; *Matter of Water Comm.*, 96 N. Y. 351; *Sweet* v. *B., N. Y. & P. R. R. Co.*, 79 N. Y. 300.)   The acts of the superintendent of public works were authorized and directed by the legislature, performed in strict compliance with the requirements of the statute, and the acquisition of the 2,754 acres of defendant's land was for canal purposes. (*Matter of Woolsey*, 95 N. Y. 144.)   The lands in question are within the forest preserve and subject to all the provisions of the Forest, Fish and Game Law regarding the protection thereof. (L. 1900, ch. 20, art. 13, § 216.)   The condemnation proceedings are conclusive upon the parties and their grantees if they are acquiesced in and are not the subject of collateral attack unless the award is appealed from. (*Farrington* v. *Mayor, etc.*, 83 Hun, 124; *Matter of Board of Education*, 59 App. Div. 260; *Dolan* v. *Mayor, etc.*, 62 N. Y. 165; *Matter of Dept. of Parks*, 73 N. Y. 265; *Mayer* v. *Mayor, etc.*, 101 N. Y. 288; *Donnelly* v. *City of Brooklyn*, 121 N. Y. 9; *People ex rel. G. L. Co.* v. *Common Council*, 78 N. Y. 56; *Patterson* v. *City of Binghamton*, 154 N. Y. 418; *Ins. Co.* v. *Lawrence*, 14 Johns. 55; *Conrow* v. *Little*, 115 N. Y. 387; *Perry* v. *Munger*, 121 N. Y. 161; *Crossman* v. *Rubber Co.*, 127 N. Y. 34.)

CHASE, J.   The defendant Fisher at all the times hereinafter mentioned was the owner of 9,500 acres of forest land in the county of Herkimer, except the lands taken therefrom by the state of New York as hereinafter mentioned.

Prior to 1881 the natural supply of water in the Black river had been materially reduced by its being diverted to the uses of the Black river canal.

By chapter 336 of the Laws of 1881 $6,000 was appropriated " To construct reservoirs upon the Independence and Beaver rivers, in Lewis county, for the purpose of restoring to Black river its natural supply of water." The superintendent of public works was thereby directed " To build said reservoirs at such places as he may deem most expedient on said rivers, and to take and appropriate any lands   *   *   * which may be required for the purpose of building such reservoirs, and bringing them into successful use." Other appropriations were subsequently made therefor. A dam was built across Beaver river below the defendant Fisher's land, which was completed and filled in 1887. It overflowed 1,594.22 acres of her land.

On September 12, 1887, she filed with the Board of Claims of the state of New York a claim for damages amounting to $24,000, in which she alleged that said dam had been erected and that it had caused the river to overflow about 2,000 acres of her land, " Constituting the same a part of the permanent bed of said reservoir." She also alleged that said dam is and was by the state, its officers, agents and servants who built the same, designed to be permanent, and that said reservoir is and was likewise intended to be perpetual, and that thereby the state has perpetually deprived her of said land and all the use and benefit thereof, and has permanently appropriated the same and the timber thereon to its own exclusive use and benefit." She also alleged that the timber on her adjoining land and said adjoining land had been diminished in value by reason of her said land being so covered with water. She amended her claim on September 28, 1888, and on June 4, 1891, not, however, affecting the matter now under consideration.

The Board of Claims, on December 29, 1891, filed its decision, in which it found that "The State of New York took and permanently appropriated to its use for said dam and reservoir" 1,594.22 acres of land and water of the claimant, as appears from a map and survey by which is shown "The land and water of claimant so as aforesaid taken and permanently appropriated," and awarded to her $9,970 damages. On February 8, 1892, the defendant was paid the amount of said award and she receipted therefor "In full of an award * * * for lands overflowed and for damages from overflow of water and for timber cut and used."

By chapter 469 of the Laws of 1892 it was made the duty of the superintendent of public works to raise said dam not less than five feet vertically above the level of the dam as it then existed. The dam was raised five feet vertically and as so raised it was filled in the spring of 1894.

On February 4, 1895, the defendant Fisher filed another claim with the Court of Claims for damages amounting to $21,000, in which she alleged on information and belief, among other things, that 700 acres of land belonging to her in said tract was overflowed by raising the height of said dam. After said claim was filed and before the hearing thereon and in 1897, commencing in July and completed in the fall of that year, a right-angle survey was run around the land overflowed by the water in said dam. The right-angle survey was run to straighten the lines of the first survey. It was done as described by the surveyor as follows, viz.: "We would go just as far as we could this way, until we saw that we were going to run into the flow and then we would turn and go the other way and turn a right angle. In that way we went around the whole flow ground." This survey included within straight lines the bays, arms and flowline of the reservoir. The survey so made included 2,754 acres of the defendant Fisher's land. After such survey was made and on November 10, 1897, the claimant entered into a stipulation with the state by which she agreed to accept $4,500 "in full satisfaction of 700 acres of land permanently appropriated by the

state in connection with the construction and erection of the dam and its addition of five feet as aforesaid and also for all damage to the 7,000 acres of land not appropriated which the claimant alleges is damaged by the said construction of the addition aforesaid."

The court thereupon entered judgment in favor of the claimant for $4,500 "for damages to lands and for the permanent appropriation of" the lands specifically therein described in accordance with said right-angle survey. Before said judgment was paid the state engineer made an accurate survey and map of the lands bounded by said right-angle survey as included in said judgment which was duly certified by him to be correct and the superintendent of public works annexed thereto a certificate stating that " By virtue of the power and authority vested in me by act, Chapter 338 of the Laws of 1894 of the State of New York, I do hereby permanently appropriate for the use of the state for canal purposes two thousand seven hundred and fifty-four acres of land from the lands of Mary L. Fisher, in the township No. 5, County of Herkimer, N. Y., as mentioned and described in annexed survey and map, such lands being necessary to provide earth and gravel for the repair and improvement of the canals of this State."

Said map, survey and certificate were on July 14, 1898, filed in the office of the state engineer. A notice of the filing and the date of filing such map and survey specifically describing that portion of such real property belonging to the defendant Fisher, which had been so appropriated, was duly served upon her July 18, 1898. On July 22, 1898, the defendant Fisher received the award of $4,500 and gave to the superintendent of public works a receipt "in full of an award made by the Board of Claims on the 10th day of November, 1897."

In December, 1905, the defendants entered upon that portion of the 2,754 acres of land which lies between the flow line of said reservoir and the line as described by said right-angle survey and cut therefrom 1,033 trees and removed the

same therefrom. This action is brought pursuant to section 222 of the Forest, Fish and Game Law (Laws of 1900, chapter 20, as amended by Laws of 1905, chapter 285) to recover damages for the trespass or waste on said lands. Judgment was rendered in favor of the plaintiff, and an appeal was taken from said judgment to the Appellate Division, where the judgment was affirmed, and from the judgment of affirmance an appeal has been taken to this court.

The right of eminent domain is a necessary incident to the right of government. It is and always has been exercised by the state as a sovereign power subject to the constitutional provision that private property shall not be taken for public use without just compensation. The exercise of this power rests with the legislature. The defendants insist that the state never obtained any title to the lands from which the trees were cut, and they further insist that if the state did obtain any interest or title therein it was a permanent easement only, which did not deprive the defendant Fisher from removing or authorizing the removal of the trees therefrom. The defendants' contention makes it necessary to examine the statutes authorizing the appropriation of land for canal purposes and a consideration of the facts that we have recited in view of such statutes.

Prior to the enactment of the Canal Law (Laws of 1894, chapter 338) it was provided by the Revised Statutes and the acts supplementary thereto that in the construction of every canal authorized by law " The canal commissioners shall have power, and it shall be their duty, to make all such canals, feeders, locks, dams, aqueducts, and other works, as they shall deem the proper construction of such canal to require; and they shall enter on, and take possession of, and use, all lands, streams and waters, the appropriation of which, for the use of such canals and works, shall in their judgment, be necessary." (Rev. Stats. part I, chap. 9, title 9, art. 2, sec. 16.)

When it became necessary or expedient to reconstruct any bridge on a change of plan or make any repairs or improvement on any completed canal, such as the opening of new

feeders or the construction of additional locks, dams, embank-
ments, tunnels or aqueducts, the superintendent of public
works was required, "For that purpose to take possession of
and use all lands, waters or streams of which the occupation
and use, in his judgment, may be necessary to enable him to
discharge such duties." (Rev. Stats. part I, chap. 9, title 9,
art. 2, secs. 17 and 18, as amended by Laws of 1880, chap. 99.)

When in the judgment of the superintendent of public
works it was needful that any of the earth structures of the
canals of the state be raised, widened, strengthened or other-
wise improved, the superintendent of public works was author-
ized to enter upon and permanently appropriate to the use of
the state so much of any lands adjacent to the canals as neces-
sary to provide earth and gravel for such purposes. (Laws of
1879, chapter 152.)

When any lands, waters or streams appropriated by the
canal commissioners to the use of the public was not given
or granted to the state it was the duty of the appraisers to
make a just and equitable estimate and appraisement of the
damages and benefits resulting to the persons interested in
the premises so appropriated from the construction of the work
for the purpose of making which such premises had been
taken. (Rev. Stats. part I, chap. 9, title 9, art. 3, sec. 46;
Laws of 1879, chap. 152, sec. 2.)

It is expressly provided that "The fee simple of all prem-
ises so appropriated, in relation to which, such estimate and
appraisement shall have been made and recorded, shall be
vested in the People of this state." (Rev. Stats. part I, chap. 9,
title 9, art. 3, sec. 52.)

By chapter 293 of the Laws of 1830 it was provided,
"When any lands are overflowed by the erection of any dam
by the canal commissioners on any river, or stream connected
with the public works it shall be the duty of the canal
appraisers to make a just and equitable appraisement of the
damages sustained by the owners of such lands." (See *Hea-
cock & Berry* v. *State of New York*, 105 N. Y. 246.)

By chapter 287 of the Laws of 1836 it was provided, "When

damages shall be claimed by the owner of any lands, waters, or streams which the canal commissioners shall have occupied for temporary purposes in the construction or improvement of any state canal or other works connected therewith or on which they shall have entered for the purpose of obtaining materials for the construction or improvement of such canal or other works connected therewith, such damages if not settled by agreement shall be appraised by the canal appraisers."

It will be seen that authority was granted by the legislature to permanently take the fee of any lands, streams and waters for the use of the canals and works that in the judgment of those authorized by law to construct the canals were necessary, and that where any lands were overflowed by the erection of any dam by the canal commissioners, a permanent easement could be taken in the lands overflowed instead of taking the fee of such lands, and that lands, waters or streams could be taken for temporary purposes. All of the laws mentioned were repealed by the Canal Law which took effect by the terms thereof on the first day of October, 1894.

Section 70 of the Canal Law provides that "The superintendent of public works may enter on, take possession of and use any lands, structures and waters, the appropriation of which for the use of the canals and the works connected therewith, and for the execution and completion of any repairs or improvements directed by the canal board or legislature to be made, shall in his judgment be necessary." (L. 1894 ch. 338.)

It also provides for an accurate survey and map of the lands appropriated and for filing the same and service thereof upon the owner, "Specifically describing that portion of such real property belonging to such owner, which has been so appropriated, and from the time of such service, the entry upon and appropriation by the state of the real property described in such notice, for the uses and purposes of the canals, shall be deemed complete, and such notice shall be conclusive evidence of such entry and appropriation and of the quantity and boundaries of the lands appropriated."

Section 71 of said act provides for the permanent appropriation for the use of the state of "So much of any lands adjacent to the canals as may be necessary to provide earth and gravel for such purposes."

Section 72 of said act provides for the temporary appropriation of contiguous lands. Section 74 of said act provides that "The owner of lands overflowed by the erection of a dam by the superintendent of public works * * * or of lands, waters or streams which such superintendent occupies for temporary purposes * * * or upon which the superintendent enters for the purpose of obtaining materials for the construction or improvement of such canal or other works, shall have allowed and paid to him such just and equitable damages as he sustains. * * *"

The Canal Law, like the Revised Statutes, expressly provides that the title to all real property permanently appropriated for the use of the canals of the state shall be vested in the People of the state. What lands, structures and waters it is necessary to appropriate for the use of the canals and the works connected therewith is by the Canal Law, and was by the laws existing prior to the Canal Law, left to the judgment of the officer or board charged with the construction, care and superintendence of the canals. It is manifestly necessary that such officer or board shall determine what lands, structures and waters are necessary for the use of the canals and also whether it is necessary in the interests of the state to permanently appropriate such lands, structures and waters or whether a permanent easement therein, or the temporary use of such lands, structures and waters will be sufficient to satisfy the interests of the state. Private property cannot be taken for public use unless it is necessary for such public use, but all that is required of such officer or board in determining the necessity for taking private property is that they act in good faith and with sound discretion. No evidence of bad faith in any of the acts mentioned was produced.

The chancellor in *Jerome v. Ross* (7 Johnson's Chancery, 315, 339), in referring to the authority then vested in the canal

commissioner, said, "The word 'necessary' does not mean absolute and indispensable, or that without the use of the land in the given case the work could not possibly go on. That would be the same as extreme necessity. The legislature used the word in a more reasonable and popular sense. It is sufficient that the land used and the materials taken from it are needful and conducive to the object and more convenient in the application and less valuable, and the use of them less injurious to the owner than any that might readily be selected. There must, from the reason of the thing and the nature of the case, be great latitude of discretion in the selection of land and the materials."

There was nothing in the act of 1830 that prohibited the canal commissioners from determining that the fee of lands covered by water was necessary for the use of the canals. When lands are appropriated the quantity must be definitely ascertained and described, so that the owner may know how much he has lost and what he is entitled to be compensated for. (*Hayden* v. *State of New York*, 132 N. Y. 533, 536.) It is not only necessary that the boundaries and quantity of the land be ascertained and described, but the interest therein appropriated by the state must also be determined and stated for the purpose of ascertaining the compensation to which the claimant is entitled. The defendant Fisher, in each of the claims presented by her against the state, assumed that the lands in her claim described had been permanently appropriated by the state. Where a claim arises in the Court of Claims in a case where the state seeks to appropriate or has appropriated land for a public use, the judgment must contain a description of such lands. (Code Civ. Pro. sec. 269.) If a continuous easement and not the fee of the land is appropriated it should be so stated in the judgment. So far as appears from the record before us the state in each case assented to the defendant Fisher's claim that a permanent appropriation of her lands had been made, and in the first judgment a reference was made therein to the survey of the particular piece of land appropriated, which survey was then on file with the Court of

Claims, and in the second judgment the lands were in express terms permanently appropriated and specifically described by metes and bounds. Although the stipulation on which the second judgment was entered is not as broad as the judgment, the judgment was entered while the defendant Fisher, the claimant therein, was represented by counsel, and she accepted the award therein provided and acquiesced therein for many years. She has never made any claim that the judgments were entered by mistake or inadvertence, or that the same were not in accordance with the agreement of her counsel, and no application has ever been made to amend or correct the same. In each case the judgment in plain and unmistakable language is for a *permanent appropriation of the lands.*

It may not be necessary on this appeal to determine whether the defendant Fisher in this action can attack such judgments and claim that a continuous easement only was taken in the lands covered by water or whether she can now claim that the lands between the flow line and the right-angle survey were not acquired by the state. If the fee of the lands contained within the right-angle survey was previously obtained by the state then the filing of the map of July 14, 1898, was an idle ceremony. If, on the other hand, the defendant Fisher is right in her claim that by the two proceedings prior to the filing of the map the state did not permanently appropriate the 2,754 acres, but that it obtained a continuous easement only in the lands actually covered by the waters of the dam, then the fee of the lands covered by said waters and of the lands between the flow line and the right-angle survey remained in her subject to permanent appropriation if the superintendent of public works in his judgment should decide that they were necessary for the use of the canals and works connected therewith. Such map was made, filed and served pursuant to the provisions of sections 70 and 71 of the Canal Law, and by such provisions of the Canal Law it is expressly provided that "From the time of such service, the entry upon and appropriation by the state of the real property described in such

notice, for the uses and purposes of the canals, *shall be deemed complete, and such notice shall be conclusive evidence of such entry and appropriation and of the quantity and boundaries of the lands appropriated."*

At the time of the cutting the fee of the land on which the trees were cut was in the state of New York and the defendants were trespassers in entering thereon and cutting and removing such trees. ·

The defendants also insist that the lands upon which the trees were cut are not within the forest preserve and that if they are not within the forest preserve this action, which is brought pursuant to section 222 of the Forest, Fish and Game Law, (L. 1900, ch. 20) cannot be sustained. Section 216 of the Forest, Fish and Game Law provides : " The forest preserve shall include the lands owned or hereafter acquired by the state within the county of Clinton, except the towns of Altona and Dannemora, and the counties of Delaware, Essex, Franklin, Fulton, Hamilton, Herkimer, Lewis, Oneida, Saratoga, Saint Lawrence, Warren, Washington, Greene, Ulster and Sullivan, except,

" 1. Lands within the limits of any village or city, and

" 2. Lands not wild lands acquired by the state on foreclosure of mortgages made to loan commissioners."

The language of the statute thus specifying the lands which are included within the forest preserve is clear and definite and does not in itself require construction. Its plain and positive language is made even more certain by the fact that some exceptions are stated therein. It is suggested that serious trouble and inconvenience may arise if lands owned by the state within the boundaries of the forest preserve but not specially purchased and held as wild forest lands are treated as a part of the forest preserve. The questions that may arise about lands owned by the state within the boundaries of the forest preserve, but which are now devoted or which it may be desirable to devote to purposes other than as wild forest lands, may be left for solution when they arise.

The lands upon which the trees were cut are wild forest

lands owned by the state within the forest preserve, and although acquired pursuant to the statutes relating to the canals and works belonging to the state connected with the canals, were acquired for purposes and objects directly connected with the forest preserve and the preservation and supply of water in the streams leading from the forest preserve.

The lands in question are not only owned by the state, but their retention as wild forest lands is within the spirit as well as the letter of the statute creating and defining the preserve. The control of such forest lands should be and is with the forest, fish and game commission and the action was, therefore, properly brought pursuant to the Forest, Fish and Game Law.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., O'BRIEN, EDWARD T. BARTLETT, HAIGHT, VANN and HISCOCK, JJ., concur.

Judgment affirmed.