In the Matter of the Application of MARGARET MAYO, Respondent, for a Peremptory Mandamus Order against PAUL WINDELS, Corporation Counsel of the City of New York, Appellant.

Second Department, June 24, 1938.

*George S. Parsons* [*Paul Windels, Corporation Counsel, Theodore R. Lee* and *John Suglia* with him on the brief], for the appellant.

*Max Chopnick* and *Florence J. Sullivan,* for the respondent.

LAZANSKY, P. J.   The peremptory mandamus order entered after trial directed the corporation counsel of the city of New York to begin proceedings to ascertain and fix damages of petitioner for the damming up and diversion of waters of the Croton river (other than by means of Old Croton dam and aqueduct as constructed in 1842), including Cornell dam and aqueduct, built in 1905, and certain pumps put in operation about May, 1933.

Prior to 1834 the Croton river had its source in Dutchess county and flowed with numerous tributaries through Westchester county and emptied into the Hudson river.   On May 2, 1834, the Legislature passed an act which provided for *supplying the city of New York with pure and wholesome water.*   After certain preliminaries provided for in the act, and in 1842, a petition was presented to a vice-chancellor praying for the appointment of appraisers to estimate the damage accruing from the construction of the work, which would divert the use of the water of the Croton river for milling and manufacturing purposes from the lands and premises mentioned in the petition, including the property of the predecessors of petitioner herein.   The plan provided for the building of a dam and an aqueduct, now known as Old Croton dam and aqueduct.

Instead of limiting the estimate of damages as recited in the petition, and because, as recited in the order, it was objected by the then owners that an estimate could not be made before it was ascertained by actual experiment what proportion of the waters it would be necessary to divert for the purposes of the dam and aqueduct, and because it was contemplated that it might be necessary then or " at some future time *to divert the whole of the said waters of the said Croton River* for the purposes aforesaid," and, with the consent of the owners, that the damages should be " estimated *as for a total diversion* " *of the waters* from the lands and premises of the owners, it was ordered by the vice-chancellor that the appraisers estimate the damages " *as for a total diversion of said waters* " from the land and premises, and " that the Mayor, Aldermen and Commonalty of the City of New York be at liberty at any time or from time to time hereafter, to divert a part or the whole of the said waters of the said Croton River from said lands and premises for the purposes contemplated by the aforesaid act."

The appraisers made their report and in it they said that they had " estimated and appraised the damages which have been

and which will be sustained by the owner or owners of the said property in the said order and map hereto annexed mentioned and described in consequence of *the diversion of the water of the Croton River* for the purposes aforesaid at the sum of " $9,761.25, and they further reported that the " appraisal and estimate is made *as for a total diversion of said water* from said land, premises and property in the said order and map particularly mentioned and described, and that in making such appraisement regard was had to the circumstance that in and by said order the Mayor, Aldermen and Commonalty of the city of New York are at liberty at any time and from time to time hereafter to divert a part or the whole of said water from the said Croton river from the said lands and premises, for the purposes contemplated by the aforesaid act."

Thereupon an order of the vice-chancellor was entered; it recited the estimate and appraisal of the appraisers for damages " which *have been and will be sustained by the owner or owners* of the several parcels * * * *in consequence of the diversion of the waters* of the Croton river therefrom for the purposes aforesaid " at the sum of $9,761.25, and " that such appraisal and estimate is made *as for a total diversion of said water,* from said property." The order then recited the amount of the award " *in full compensation for the damages aforesaid,* and that upon such payment The Mayor, Aldermen and Commonalty of the City of New York shall be at liberty at any time, or from time to time thereafter *to divert a part or the whole of the waters* of the Croton River from the said lands and premises for the purposes contemplated by the aforesaid act."

The then owners of the land in question signed a receipt for the award made to them, " being the amount awarded for the damages occasioned by the diversion of the water of the Croton river for the use of the Croton Aqueduct being the amount ordered to be paid by a certain order or decree of the Court of Chancery before the Vice Chancellor of the first circuit, bearing date the 23rd day of September, 1845, and a subsequent order bearing date the 10th day of December, 1845." The details of the order of September twenty-third are not recited in the receipt. The subsequent order of December 10, 1845, came about because of a dispute between the predecessors of petitioner herein and some third parties as to who was entitled to the award, and the vice-chancellor directed that the award be paid to petitioner's predecessors and referred to total diversion as provided for in the other orders.

The Old Croton dam and the aqueduct to carry the water therefrom to the city of New York were built and completed in 1842.

This dam was about six miles above the property owned by petitioner's precedessors. It was 40 feet high and had a span of 250 feet, and diverted approximately 90,000,000 gallons of water a day. This continued until 1905 when, by authorization of chapter 490 of the Laws of 1883, the city proceeded to build and complete what is now known as the Cornell or New Croton dam and aqueduct to carry water therefrom to the city of New York. This dam was two miles south of the Old Croton dam. Between the two dams there had been seven tributaries flowing into the river. The proceeding to acquire property in connection with this improvement did not include petitioner's property. The Cornell dam diverted approximately 300,000,000 gallons of water a day. It will thus be seen that between 1845 and 1905 a large quantity of water came from the spill of Old Croton dam and the seven tributaries. In 1932 the city constructed three electric pumps, each with a pumping capacity of 60,000,000 gallons a day, to increase the flow from the two dams into the aqueducts. This practically dried up the river below the Cornell dam.

Petitioner claims that she is suffering damage to her water rights in excess of water diverted by the Old Croton dam, to wit, 90,000,000 gallons a day.

The Special Term found that by its payment in the condemnation proceedings, by which the rights in connection with the Old Croton dam and aqueduct were acquired, the city did not acquire any right to divert any of the waters of the said Croton river as it flowed below said Old Croton aqueduct, nor in excess of the capacity of the said Old Croton dam and said Old Croton aqueduct as constructed in the year 1842, which capacity never exceeded 90,000,000 gallons a day. In other words, the Special Term has found that the city was not entitled, under the proceedings for the acquirement of rights for the Old Croton dam, to divert more than 90,000,000 gallons a day, and that petitioner was damaged to the extent of the excess diversion of water, and, therefore, directed that the corporation counsel of the city of New York institute appropriate condemnation proceedings to ascertain and fix the damages sustained by petitioner and others similarly situated by reason of the damming up and diversion of the waters of the Croton river in greater quantity than was or could have been dammed up and diverted by means of the Old Croton dam and Old Croton aqueduct as constructed in 1842.

This determination would be accurate if the damages were to be estimated pursuant to the allegations of the petition in the Old Croton dam condemnation proceeding.

The taking of property beyond that which is required for the particular use named in the petition is a violation of constitutional limitations. (2 Lewis on Eminent Domain, [3d ed.] § 600; Cooley on Constitutional Limitations [7th ed.], p. 779.) But where, with the knowledge and consent of the property owner, an order permitting it is made, and an award is made and directed to be paid and is accepted by the owner for a taking in excess of that described in the petition, the owner will not be heard to say that as to the excess the proceeding was invalid and as to it there was a taking without due process of law. (*Winslow* v. *Baltimore & Ohio Railroad*, 208 U. S. 59; *Sherman* v. *McKeon*, 38 N. Y. 266; 21 C. J. § 216, p. 1212.)

That is just what happened here. The petition was for a taking to build a dam by which it was expected that 90,000,000 gallons of water a day would be diverted. But the owners objected to going ahead with the proceeding because it would be impossible to foretell how much water would be diverted and, because of that objection, and with their consent and knowledge, an order was made by the vice-chancellor, an award was made by the appraisers, the award was approved by the vice-chancellor, and again, in the dispute between owners, the award was confirmed for an estimate of damages " which have been and will be sustained by the owner or owners of the several parcels   *   *   *   in consequence of the diversion of the waters of the Croton river therefrom for the purposes aforesaid, at the sum of   *   *   *;   and that such appraisal and estimate is made as for a *total diversion of said water from said property;   *   *   *   and that upon such payment The Mayor, Aldermen and Commonalty of the City of New York *shall be at liberty at any time, or from time to time thereafter to divert a part or the whole of the waters of the Croton River from the said lands and premises for the purposes contemplated by the aforesaid act.*" The receipts signed by the then owners referred to the orders made by the vice-chancellor. The estimates and awards were, therefore, not only for the water that might be diverted by the city of New York for the purposes of the act (to wit, the furnishing of pure and wholesome water to the city of New York) by reason of the Old Croton dam and aqueduct, but by reason of any other diversion of water *from any part* of the Croton river including tributaries above the property of the persons who owned at that time. It was anticipated that some day the city might take from the river, above the property of these owners, so much water that their water rights would be completely lost by reason of the drying up of the river. It was for that they sought payment and it was for that they were paid. They are not entitled to any more damages.

That the river has become unnavigable is no affair of the petitioner, not only because that was contemplated by her predecessors, who received compensation, but for the further reason that it is a matter between the city of New York and the State. (*Van Cortlandt* v. *N. Y. C. R. R. Co.*, 265 N. Y. 249.)

That the city is selling water to other municipalities is no concern of the petitioner. Full measure for her damages has been given to her by the city, and, if the city is exceeding the purposes of the taking, that is matter about which the State may concern itself. Chapter 490 of the Laws of 1883, providing for the building of the Cornell dam, by section 38 permitted the city of New York to furnish water to villages and cities on the line of the new aqueduct.

Respondent cites no authorities which hold to the contrary of the foregoing.

The order should be reversed on the law and not in the exercise of discretion, with costs, and the proceeding dismissed, with costs.

CARSWELL, JOHNSTON and ADEL, JJ., concur; HAGARTY, J., dissents and writes for modification.

HAGARTY, J. (dissenting). I dissent and vote to modify. Chapter 256 of the Laws of 1834, entitled " An Act to provide for supplying the city of New-York with pure and wholesome water," provided for the appointment of five persons as water commissioners for the city of New York. They were charged with the duty of making a survey and adopting a specific plan for the procurement of a water supply for the city of New York, which plan, upon approval by the common council of the city, was to be submitted to the electors for their assent or refusal to allow the common council to proceed in raising the necessary money to construct the works. It is undisputed that the specific plan of these water commissioners, formulated in accordance with the provision of the act, was for the erection of Old Croton dam, as subsequently constructed, which is six miles upstream from the property owned by the petitioner. The water commissioners, by petition dated the 25th day of January, 1842, addressed to the vice-chancellor of the First Circuit, sought the appointment of three appraisers to examine property inclusive of that now owned by respondent " and to estimate the amount of damage thereto by the operation aforesaid." The damage, in the opinion of these commissioners, as appears from their petition, was " that by the construction of the work aforesaid the use of the water of the Croton River for Milling and Manufacturing purposes will be diverted from the lands and premises hereinafter particularly mentioned and described." On the 8th day of March, 1842, the vice-chancellor made an order

appointing appraisers to "examine the property hereinbefore described and to estimate the damage sustained by the owner thereof in consequence ' of the diversion of the said waters therefrom for the purposes aforesaid.' " The order recites that the owners of the land had objected to the estimating of damages before the proportion of the " said waters " to be diverted could be ascertained. It was, therefore, provided: " And whereas it is contemplated that it may be necessary now or at some future time to divert the whole of the said waters of the said Croton River for the purposes aforesaid; and the said petitioners therefore, and in order to obviate the aforesaid objection, consent the said damages shall be estimated as for a total diversion of said waters from said lands and premises. Therefore it is ordered that the said appraisers do estimate said damages as for a total diversion of said waters from said land and premises accordingly and that the Mayor, Aldermen & Commonalty of the City of New York· be at liberty at any time or from time to time hereafter, to divert a part or the whole of the said waters of the said Croton River from this land and premises for the purposes contemplated by the aforesaid act."

The report of the appraisers in fixing damage states, *inter alia:* " And we do further report that such appraisal and estimate is made as for a total diversion of said water from said land, premises and property *in the said order and map particularly mentioned and described,* and that in making such appraisement regard was had to the circumstance that in and by said order the Mayor, Aldermen and Commonalty of the City of New York are at liberty at any time and from time to time hereafter to divert a part or the whole of *said water* from the said Croton River from said lands and premises, for the purposes contemplated by the aforesaid act." (Italics mine.)

The orders confirming the report of the appraisers recite that it appears that the appraisers estimated the damages which have been or will be sustained by the owners in consequence of the diversion of the water of the Croton river for the purposes afcresaid, and such appraisal is made as for a total diversion of said waters from said property and decrees that upon such payments the city of New York " shall be at liberty at any time, or from time to time thereafter to divert a part or the whole of the waters of the said Croton River from the said lands and premises for the purposes contemplated by the aforesaid act."

When the act providing for the promulgation of a plan, the plan itself, the petition of the water commissioners, the order of appointment of appraisers, the report of the appraisers, and the order confirming that report are considered together, it seems

reasonably clear to me that the damage which was estimated and paid was for the diversion of water caused by the erection of the specific dam in contemplation. How much water this dam would divert was a moot question, and, therefore, damages were allowed on the basis of diversion of all that it was possible to divert, which at the most, was all the water that would flow into the reservoir created by the dam. That, I think, is the meaning of " the whole of the *said* waters of the said Croton River " as the term is used in the order of appointment and the report of the appraisers. This did not mean all the water of the Croton river itself in so far as the river was comprised of and fed by tributaries below the dam, separate and independent of water, if any, that might flow over the dam in question.

In 1905, when the city of New York constructed the New Croton or Cornell dam, approximately two miles southwest of the Old Croton dam, it impounded, from seven tributaries to the Croton river, waters that never constituted waters that flowed into the reservoir behind the old dam, and, in my opinion, were not appropriated and diverted waters within the contemplation of the condemnation proceeding of 1842. It is conceded that respondent has not been compensated for such additional diversion.

In my opinion, therefore, the order under review should be modified by providing for a direction to the corporation counsel of the city of New York to institute and prosecute appropriate condemnation proceedings to ascertain and fix and pay damages to the petitioner by reason of the damning up and diversion of the waters below the old dam.

Peremptory mandamus order reversed on the law and not in the exercise of discretion, with costs, and proceeding dismissed with costs.

Settle order on five days' notice.