Howard T. Hogan, J.
This is a proceeding in eminent domain instituted by the Incorporated Village of Hewlett Bay Park to acquire real property for village storage purposes.
Upon the return of this application, respondents filed an answer objecting to the proposed condemnation and interposed a cross petition in the nature of an article 78 or mandamus proceeding seeking to compel the village to hear respondents’ application for use of the subject property as a parking lot and sought a further order dismissing the petition of the village as not having been made in good faith nor for a public purpose as required by the ¡Constitutions of the State of New York and of the United States of America, and as not in conformity with the statutes in such cases made and provided in that the proposed use of the subject property was not authorized by statute.
Upon the hearing it was learned that the respondents are the owners of 110,000 square feet of land, 40,000 square feet of which lies within the limits of the incorporated village. The remainder is in the unincorporated area of the Town of Hempstead. That portion of respondents’ land lying outside the village is zoned *835 for commercial purposes and respondents built thereon a small shopping center, comprising 11 stores. The remaining 40,000 square feet within the village, like all other lands in the village, is zoned Residential “ A ” (1-acre single-family).
Shortly after this shopping center was built, the County of Nassau widened Broadway upon which this property fronted, causing a loss of parking. Because of inadequate parking and the abnormal and even hazardous traffic congestion prevailing, the respondents have made several attempts for permission to use this 40,000 square-foot area for the parking of autos, beginning in 1956 and culminating in an application which was pending when the present condemnation was initiated.
The need for additional parking is overwhelming not only for the private purpose of respondents, but for public convenience and safety in the area. Indeed, the village has not questioned this so much, as their attitude up to now has been to dissociate itself from the problem, apparently on the theory that it did not bring it about.
However, its present course goes much further than mere indifference and is designed to prevent any long-term solution of the problem by the respondents or by anyone else, as may be gleaned from the following significant quotation from the minutes of the Village Board meeting held on June 22, 1965 (p. 65):
“ The Board has given serious consideration to condemnation to the above Piermont Avenue property on which to construct a new garage — particularly in view of the fact that the town of Hempstead has the legal right to condemn property in an Incorporated Village for the purpose of creating additional parking facilities where considered necessary.
“ The Property has a frontage of 118' and a depth of 335', and it is estimated that the cost of condemnation, landscaping and garage construction, financing and contingency expenses, etc. would be as high as $95,000. This figure is broken down as follows :
Land........ $25,000
Legal Expenses.......................... 7,500
Garage Construction,
Landscaping and Fencing............... 45,000
Financing .............................. 7,500
Contingency................. 10,000
TOTAL $95,000
*836 “ The Mayor asked for opinions from those present.
“Dr. Bronsther — Inquired why was the property not condemned in 1959.
“Mayor Helman — The situation at that time was not as compelling as it is now. ’ ’
We -may assume that the village, well represented as it is by competent counsel, is fully cognizant of the rule expressed in County of Delaware v. Walton Water Co. (9 A D 2d 16) as follows: “ There seems to us no clear legislative mandate which would remove this case from the general rule ‘ that where lands have once -been taken or acquired for public use, they cannot be taken for another public use, at least if such other public use would interfere with or destroy the public use first acquired ’. (New York Cent. & Hudson Riv. R. R. Co. v. City of Buffalo, 200 N. Y. 113, 117-118; Matter of Central Hudson Gas & Elec. Corp. v. Morgenthau, 234 App. Div. 530, 532, affd. 259 N. Y. 569.)”
It therefore is of the utmost importance that we carefully consider what the true purpose of the village was in deciding to condemn this parcel of land as distinct from the stated purpose.
While the power of eminent domain is an awesome sovereign power, it is not without its limits. As was said in Cuglar v. Power Auth. of N. Y. State (4 Misc 2d 879, 897, affd. 4 A D 2d 801, affd. 3 N Y 2d 1006): “ Despite the rather sweeping language used in some of the last-cited cases, it is likewise true an attempted appropriation could be so irrational or baseless, and with such utter disregard of the public necessity for its use, that the courts would interfere (cf. Kaskel v. Impellitteri, supra [306 N. Y. 73], p. 80; see, also, 18 Am. Jur., Eminent Domain, § 107). However, as stated in People v. Fisher (supra [190 N. Y. 468], p. 477, ‘ Private property cannot be taken for public use unless it is necessary for such public use, but all that is required of such officer or board in determining the necessity for taking private property is that they act in good faith and with sound discretion
See, also, Saso v. State of New York (20 Misc 2d 826) where the court took cognizance of the true purpose of a taking in condemnation, in sustaining the sufficiency of a complaint which charged a taking for a private purpose.
When dealing with the ordinary legislative process, there is a strong presumption of validity and motive may not generally be inquired into, but even this principle gave way when the legislative act was shown to have been induced by threats. (De Sena v. Gulde, 24 A D 2d 165.) In addition, when dealing *837 with a legislative determination to condemn, it becomes especially important to scrutinize the purpose, for a proper purpose is the very essence of the right to condemn.
The petitioner village purportedly seeks to condemn this parcel for “Village Storage purposes.” It appears to have two vehicles, a truck and a tractor, a grass and weed cutter, oil drums, salt, and ice-melting chemicals, as well as some sand and blacktop for its streets.
Presently the village uses a 9,000 square-foot plot containing a small barn for this purpose, which it leases in another part of the village.
The precipitate way in which the village moved to condemn this property, without any specific plan for its development, on the eve of the hearing of an application by the owner to use it for parking purposes, coupled with its size of more than four times the present site, would seem to belie the bona fides of the petitioner’s position. The taking of property beyond that which is required for a legitimate use is constitutionally prohibited. (Matter of Mayo v. Windels, 255 App. Div. 22, affd. 281 N. Y. 837.)
It seems highly improbable that the village residents who are so adamantly opposed to any parking “ use ” for this property are content with its being converted to a storage dump, if there were any real purpose to so employ any but a small part of it.
This court has come to the conclusion that the real purpose of this condemnation proceeding in larger part is not to use this property for something affirmative, so much as it is to prevent its use for something else which the village authorities regard as undesirable. Such is a perversion of the condemnation process.
There may be little chance that respondents will ever get, either from the village or from a court, permission to use this property for parking purposes, where the burden of showing it can be used for no other purpose would appear to be insurmountable, but that need not stay this court in dealing with the present application as it finds it.
It may be noted parenthetically that should a dedication of this parcel be made to, and accepted by the town for parking purposes, such an owner would not be completely at the whim of the village in deciding how the property could best be used.
The respondents’ cross petition to dismiss the proceedings is granted and the officers and trustees are directed to entertain respondents’ application for parking facilities on subject property.