COUNTY OF ORANGE, Petitioner, v. PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent. CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Intervenor-Respondent.

TOWNS OF WALLKILL, HAMPTONBURGH, CHESTER, MOUNT HOPE, Petitioners, v. PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent. CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Intervenor-Respondent.

Second Department, July 6, 1972.

*Peter G. Striphas, County Attorney,* for County of Orange, petitioner.

*Schleider & Owen (Joseph G. Owen* of counsel), for Town of Wallkill and others, petitioners.

*Peter H. Schiff (Joel Yohalem, Herbert S. Brown* and *Arthur D. Rheingold* of counsel), for respondent.

*LeBoeuf, Lamb, Leiby & Macrae (Carl D. Hobelman, Leon A. Allen, Jr.,* and *Jacob Friedlander* of counsel), for intervenor-respondent.

BENJAMIN, J. Responding to current concern for the despoilment of our environment and our fast-growing needs for gas and electric power, in 1970 the Legislature enacted article 7 (§§ 120 through 130) of the Public Service Law (L. 1970, ch. 272, § 2), which established new procedures for the siting of major utility transmission facilities.[1] Evincing a clear intent to provide a single forum and single proceeding, open to all interested parties, for the expeditious resolution of all matters concerning the location of such facilities (see legislative findings in section 1 of chapter 272 of the Laws of 1970), article 7 provides as follows:

Section 121: No major utility transmission facility may be built by a utility company unless the Public Service Commission (hereinafter called "PSC") has first issued a certificate of environmental compatibility and public need.

Section 122: Before such certificate is issued, PSC must hold hearings on personal notice to the chief executive officers of affected municipalities, the State legislators from the affected areas, the State Commissioner of Environmental Conservation, the Commissioner of Commerce and the Director of the Office of Planning Services, and on notice by newspaper publication to residents of the affected areas.

Section 124: The parties to the proceeding shall include the afore-mentioned State Departments, the municipalities and residents who file notices of intent to become parties, and nonprofit conservation or commercial associations which similarly file notices of intent to become parties; and PSC shall designate members of its staff to represent the public interest in the proceeding.

---

1. In 1972 it enacted a similar statute with respect to the siting of generator plants.

Section 126: On the record adduced at the hearing, PSC must either grant or deny the utility's application for a certificate; and the grant of such application may be '' as filed '' or upon such conditions or modifications as PSC deems appropriate. A certificate may not be granted unless PSC finds (1) a need for the facility [i.e., transmission line], (2) the probable environmental impact, (3) '' that the facility represents the minimum adverse environmental impact, considering the state of available technology and the nature and economics of the various alternatives, and other pertinent considerations,'' (4) '' what part, if any, of the line shall be located underground '' and '' that such facility conforms to a long-range plan for expansion of the electric power grid of the electric systems serving this state and interconnected utility systems, which will serve the interests of electric system economy and reliability '' and (5) '' that the location of the facility * * * conforms to applicable * * * local laws and regulations * * * all of which shall be binding upon * * * [PSC], except that * * * [PSC] may refuse to apply any local ordinance * * * or regulation * * * or requirement which would be otherwise applicable if it finds that as applied to the proposed facility such is unreasonably restrictive in view of the existing technology, or of factors of cost or economics, or of the needs of consumers whether located inside or outside of such municipality.''

Section 128: Any party aggrieved by PSC's determination may apply to it for a rehearing and thereafter may obtain a judicial review of PSC's order. The court review may be had in a proceeding instituted in the Appellate Division and expeditiously heard on the original record; the court may not consider any objection not urged at the PSC rehearing, unless there is good cause shown for such omission; '' the findings of fact on which * * * [the PSC] order is based shall be conclusive if supported by substantial evidence on the record * * * or by information set forth in * * * [PSC's] opinion ''; the scope of the court's review is limited to whether PSC's order and opinion are (a) in conformity with State and Federal law, (b) supported by substantial evidence, (c) within [PSC's] authority, (d) in accordance with statutory or PSC procedures and (e) arbitrary, capricious or an abuse of discretion; and the Appellate Division determination may be reviewed by the Court of Appeals.

Section 129: Except for the just-described court review of PSC's order, '' no court * * * shall have jurisdiction to * * * determine any matter * * * which was or could have been determined in a proceeding under this article ''.

Section 130: "No state agency, municipality or any agency thereof may require any approval, consent, permit, certificate or other condition for the construction * * * of a * * * facility * * * [for which] a certificate * * * has been issued".

Further indicating the legislative intent to restrict issues concerning the location of transmission lines to the article 7 proceeding is the 1970 amendment of section 4 of the Condemnation Law (L. 1970, ch. 272, § 5). Prior to that amendment, section 4 required that a petition for condemnation state the public use for which the property was required and the facts showing the need for its acquisition for that use[2]; the 1970 amendment provides that if the property is to be used for a utility transmission line, the petition may dispense with an allegation of facts showing need for the property and may instead allege that a certificate of environmental compatibility and public need has been issued by PSC, thus requiring that the issue of need for the taking be litigated in the PSC proceeding.

In September, 1970 Consolidated Edison Company of New York (hereinafter called "Con Edison") applied for an article 7 certificate for the construction of electric transmission lines from Ramapo to Rock Tavern (the north-south leg) and west from Rock Tavern to Thompson (the east-west leg). The required notices were given and public hearings were held on 54 days before a PSC hearing examiner, producing a record containing about 9,000 pages of testimony and about 200 exhibits; more than 80 governmental bodies and officials, private organizations and interested individuals appeared and participated in the hearings; also participating were the members of PSC's staff (hereinafter called "Staff") who had been designated to represent the general public. In August, 1971 the hearing examiner filed a report recommending approval of Con Edison's proposed route for the north-south leg and the Staff's suggested route (different from that proposed by Con Edison) for the east-west leg; exceptions to his report were filed by various parties and the various routes proposed at the hearings by Con Edison, the Staff, Orange County and the Town of Cornwall were viewed on the ground and from a helicopter by PSC and representatives of the parties; and in October, 1971

2. The right to be heard on the issue whether a taking for a transmission line is for a public use was and still is conferred by section 7 of article I of the State Constitution as well as by section 4 of the Condemnation Law (see *Fifth Ave. Coach Lines* v. *City of New York*, 11 N Y 2d 342, 347–348). The right to be heard on the issue of need for such taking is not in the Constitution, but was in section 4 of the Condemnation Law prior to 1970.

oral argument on the examiner's report was had before PSC. On January 25, 1972 PSC adopted the examiner's report, with some minor modifications, and granted a certificate of environmental compatibility and public need for the transmission lines along the approved routes (Order No. 72-2). Various parties requested a rehearing and it was held; PSC then made a slight modification in its determination as to the north-south leg, severed the east-west leg and remanded the east-west leg to the examiner for a rehearing (Orders Nos. 72-2[A], 72-2[B]). The instant proceeding to review PSC's determination was then brought by Orange County and the Towns of Wallkill, Hamptonburgh, Chester and Mount Hope.

This is the first judicial review proceeding under article 7 of the Public Service Law. The main issues, broadly stated, are (a) whether there is substantial evidence to support PSC's findings that there is a need for the transmission line and that the approved north-south aboveground route is the most desirable one in light of all relevant factors; (b) whether the certification of the north-south leg, alone, is permissible, supported by substantial evidence, and not arbitrary or unreasonable; and (c) whether article 7 violates the home rule and eminent domain provisions of the State Constitution.

With respect to the need for the north-south leg of this transmission line (the only leg now before us), it is unnecessary to detail the relevant evidence. Suffice it to say that there is ample proof in this voluminous record that the need is great and pressing. Similarly is it unnecessary to detail the evidence on the question whether the route approved for that leg is the most desirable one, in light of all the relevant factors spelled out in the statute; on this point, too, there is ample proof supporting PSC's choice. While the question whether the transmission line should be underground or aboveground is somewhat closer, there is substantial evidence supporting PSC's finding that in light of all the relevant factors it would be best to build the line aboveground; and the determination to approve the line in that form clearly is not arbitrary or unreasonable.

PSC's decision to now certify only the north-south leg, while severing and continuing the proceedings with respect to the east-west leg, is within its power, since section 126 broadly authorizes it to grant the application for certification " as filed or  *  *  *  upon such terms, conditions, limitations or modifications of the construction  *  *  *  of the facility " as it deems appropriate. And there is ample proof in the record establishing the reasonableness and propriety of that determination.

In sum, the fact findings upon which PSC's orders are based are supported by substantial evidence and the orders are not arbitrary, capricious or an abuse of discretion.

Turning now to the attack on the validity of article 7, there is no merit in the petitioners' contention that it contravenes the home rule provisions in article IX of the State Constitution insofar as it authorizes the PSC to override local laws and regulations which it finds "unreasonably restrictive" (§ 126, subd. 1, par. [f]) with respect to the location of major transmission facilities. The short answer to that contention is that (a) both article IX of the State Constitution and section 11 of the Statute of Local Governments have reserved to the State Legislature the power to enact general laws relating to matters of substantial State concern, even though they may be intermingled with matters of local concern, and (b) article 7 of the Public Service Law clearly is a general law relating to matters of substantial State concern (*City of Rye* v. *Metropolitan Transp. Auth.*, 24 N Y 2d 627; *Whalen* v. *Wagner*, 2 Misc 2d 89, affd. 3 A D 2d 936, affd. 4 N Y 2d 575; *Adler* v. *Deegan*, 251 N. Y. 467; *Matter of McAneny* v. *Board of Estimate*, 232 N. Y. 377). It may also be noted, at this point, that in this case PSC's exercise of its statutory power to override unreasonably restrictive local laws and regulations adequately conformed to the requirements of section 126 (subd. 1, par. [f]) of the Public Service Law.

Petitioners further contend that article 7 of the Public Service Law, read with section 4 of the Condemnation Law as amended in 1970, unconstitutionally deprives property owners of adequate notice and an opportunity to be heard on the issue of need for the taking of their property for a utility transmission line. This is so, say petitioners, because the 1970 amendment of section 4 of the Condemnation Law bars litigation of that issue in the condemnation proceeding and relegates the issue to the PSC certification proceeding, wherein property owners get no personal notice but only notice by newspaper publication.

For various reasons, this contention may not be sustained.

In *Schroeder* v. *City of New York* (371 U. S. 208 [which involved the question of adequate notice and a right to be heard on the issue of fair compensation]), the Supreme Court pointed out that it is "impossible to draw a standard set of specifications as to what is constitutionally adequate notice, to be mechanically applied in every situation" (p. 212); and the court there "recognized the practical impossibility of giving personal

notice in some cases, such as those involving missing or unknown persons " (p. 212). As previously noted, article 7 requires personal notice to the State Senators and Assemblymen from the affected areas, to the executive officers of the counties, towns and villages in the affected areas and to various interested State departments; and it provides for notice to property owners in those areas by way of newspaper publications. It seems evident to me that the notice to all these local officials and legislative representatives would be amply publicized and the facts called to the attention of their constituents, as, indeed, happened in this very case; hence, that notice, coupled with the newspaper publications, clearly seems adequate to satisfy the requirements of due process. And a further reason for that conclusion is the fact that the actual location of the transmission line cannot be known until the PSC hearings have ended and PSC has decided which of the various proposed routes should be approved; consequently, at the time the PSC hearings are scheduled and held the parties whose land eventually will be taken can, as a practical matter, be considered "unknown", and it would be unrealistic and unreasonable to hold that due process required personal notice to them.

There are other, equally cogent, reasons why petitioners' contention of constitutional invalidity should not be sustained. It is the general rule that the question of need for a taking is for the Legislature, not the courts; that the courts cannot review the legislative determination on that point, and notice and a hearing on that question consequently are not essential to due process (see, e.g., *Bragg* v. *Weaver,* 251 U. S. 57, 58-59, 62; *Rindge Co.* v. *County of Los Angeles,* 262 U. S. 700, 708-709; *People* v. *Smith,* 21 N. Y. 595, 597-598; *Matter of Townsend,* 39 N. Y. 171, 174; 1 Nichols, Eminent Domain [3d ed.], § 4.11, p. 540; 17 Carmody-Wait 2d, New York Practice, § 108:13). Generally, it is only on the issues of fair compensation and public use for the taken property that property owners have a constitutional right to be heard, and the right to notice and a hearing on the issue of need for the taking exists only if granted by statute (see, e.g., *People* v. *Adirondack Ry. Co.,* 160 N. Y. 225, 238-239, affd. *sub nom. Adirondack Ry. Co.* v. *New York State,* 176 U. S. 335; *Fifth Ave. Coach Lines* v. *City of New York,* 11 N Y 2d 342, 347-348; *Rindge Co.* v. *County of Los Angeles, supra; Bragg* v. *Weaver, supra; Matter of Townsend, supra; People* v. *Smith, supra*). In light of these general principles, then, property owners do not appear to have been deprived of any constitutional right when in 1970 the Legislature took away their previous statutory right to litigate, in the con-

demnation proceeding, the question of need for a taking for a utility transmission line.

True, there seems to be some authority to the effect that, despite the foregoing general rules, the courts may nevertheless interfere if the condemnor's finding of need for the taking was corrupt, made in bad faith, or palpably irrational (see, e.g., *People* v. *Fisher,* 190 N. Y. 468, 477; *Cuglar* v. *Power Auth. of State of N. Y.,* 4 Misc 2d 879, 896–897, affd. 4 A D 2d 801, affd. 3 N Y 2d 1006; *Matter of Brent* v. *Hoch,* 25 Misc 2d 1062, 1065–1067, affd. 13 A D 2d 505, mot. for lv. to app. den. 10 N Y 2d 706; 1 Nichols, Eminent Domain [3d ed.], § 4.11 [1], p. 552, § 4.11 [2], pp. 553–560). However, these same authorities indicate that the right to a court review in such far-fetched cases need not be accorded in the condemnation proceeding, but is sufficiently protected if available in any other proceeding at law or in equity (1 Nichols, Eminent Domain [3d ed.], § 4.11.[2], pp. 553-560; cf. *People* v. *Fisher, supra; Kaskel* v. *Impellitteri,* 306 N. Y. 73; *Fifth Ave. Coach Lines* v. *City of New York, supra*). And it should further be noted, as Nichols points out, that even though the courts have on occasion declared their power to set aside legislative acts on such grounds, '' cases in which the power has been actually exercised seem rarely to have arisen '' (p. 557).

Here, the right to a court review of the finding of need for the transmission line is accorded by article 7 and the proceeding at bar is a case in point. We are holding that the notice provisions of article 7 are constitutionally adequate, so property owners are accorded a sufficient opportunity to challenge the finding of need, even if we were to assume, *arguendo,* that the courts have a right to review the legislative determination on that point on the grounds of bad faith or irrationality. And if we were further to assume, *arguendo,* that the notice accorded under article 7 is constitutionally inadequate, a property owner would still be able to institute an action for an injunction and a declaratory judgment (as in *Fifth Ave. Coach Lines* v. *City of New York, supra*) to bar the taking of his property on the ground that the finding of need was corrupt or irrational, or he could raise that issue in the condemnation proceeding; in that action or proceeding he could urge that sections 128 and 129 of article 7 are unconstitutional insofar as they prohibit any challenge to PSC's finding of need in any court or proceeding other than the review proceeding provided for in article 7; and, if sections 128 and 129 were in that action found unconstitutional, they could readily be severed and the balance of article 7 still be sustained.

In the present proceeding there is no real claim that PSC's finding of need was made in bad faith or was palpably irrational. The petitioners are not property owners whose land may later be taken for this transmission line, but only the County of Orange and four towns. No condemnation proceeding, in which this issue of unconstitutionality could be raised, has yet been instituted. Because of the extremely remote possibility that at some future time, in some future case, some property owner may be able to show clearly that a particular intended taking is corrupt or palpably irrational, the petitioners would have us hold, here and now, that article 7 is wholly unconstitutional. This plainly is not such a case; the question is prematurely raised in this proceeding, is not now actually before us, and would not arise and become justiciable until a condemnation proceeding is instituted. Such contention of unconstitutionality, wholly theoretical and raised in a factual vacuum by a party not directly affected by the claimed unconstitutionality, cannot and will not be sustained by this court.

Finally, I may note that this contention of unconstitutionality was not raised in the petitions for rehearing before PSC, despite the provision in section 128 of article 7 that this must be done if the point is to be preserved for court review.

For the foregoing reasons, I conclude that there is no merit in any of the petitioners' contentions; that PSC's orders should be confirmed; and that the petitions should be dismissed, without costs.

MUNDER, Acting P. J., LATHAM, GULOTTA and BRENNAN, JJ., concur.

Petitions dismissed on the merits and opinions and orders confirmed, without costs.