Jasen, J.
 

 On May 18, 1972, Niagara Mohawk Power Corporation filed an application for a certificate of environmental compatibility and public need authorizing the construction of high-voltage transmission lines in Oswego, Onondaga and Oneida Counties. The utility company submitted a proposed primary route for the lines and an environmental impact statement for that primary route. Alternative routes were also listed, but no impact statement was filed with respect to these routes. Additional alternative routes were proposed by the Syracuse-Onondaga County Planning Agency (SOCPA) and other parties to the proceedings. The primary issue during the hearings was the eventual location of the "Central East-West” segment of the entire transmission route. Niagara Mohawk’s original proposal for this part of the line was a route through the Onondaga Indian Reservation, but this had to be abandoned when negotiations for a right of way through the reservation fell through. As a result, the commission had to examine several alternative locations which were submitted by the utility and other parties to the proceedings. After extensive discussion of the various alternatives and their possible environmental ramifications, the commission chose the route initially proposed by SOCPA, rather than the Route 20 alternative route suggested by Niagara Mohawk. The appellant, appearing for the Hewlett Hills community of Syracuse, through which the SOCPA route would run, brought this proceeding to review the commission’s decision as it affects one portion of the approximately 60-mile-long transmission line. The Appellate Division affirmed the decision of the commission in all -respects. On this appeal, appellant contends that the record in this proceeding was insufficient to warrant the certification of the SOCPA alternative route.
 

 The past decade has witnessed an ever-mounting concern over the state of our common environment. Proposed construction of new energy production and distribution systems has
 
 *159
 
 drawn much of the fire and ire of citizen and environmental organizations. The residents of the area most directly affected by new construction are, naturally, often among the most strident objectors. At the same time, we have all come to know only too well the major social and economic disruptions caused by power and energy shortages. In 1970, the Legislature enacted article VII of the Public Service Law in order to provide an orderly procedure which would ensure that vitally needed new public utility facilities would be built, but only after careful consideration was given to their impact on the environment, and efforts were made to minimize that impact.
 

 In order to construct a major utility transmission facility, it is now necessary to obtain a certificate of environmental compatibility and public need from the Public Service Commission. (Public Service Law, § 121, subd 1.) The commission may not grant the certificate unless it finds, among other things, that the facility represents the minimum adverse environmental impact given the state of available technology and the nature and economics of the various alternatives. (Public Service Law, § 126, subd 1, par [c].) The commission, however, need not merely approve or reject an application; it may condition the granting of a certificate upon a modification of the proposed facility. (Public Service Law, § 126, subd 2.) To assist the. commission in gathering the evidence necessary to rule on an application for a certification, the Legislature has required that an applicant furnish a variety of information along with its application. (Public Service Law, § 122, subd 1.) Thus, an applicant for a commission certificate must submit "a summary of any studies which have been made of the environmental impact of the project, and a description of such studies”. (Public Service Law, § 122, subd 1, par [c].) The appellant would have us hold that section 122, subd 1, par [c]) mandates that an environmental impact study must be prepared and submitted by the applicant for all alternative routes. We do not believe that the Legislature intended to impose so exacting a requirement.
 

 The Legislature recognized that the commission must be given the basic information necessary to evaluate the advantages and drawbacks of both the proposed facility and any reasonable alternatives. Accordingly, in addition to the impact study on the primary proposal, the applicant must supply a description of alternatives, a description of the comparative merits and detriments of each location, and a statement of the
 
 *160
 
 reasons why the primary proposal was deemed the best suited for the facility. (Public Service Law, § 122, subd 1, par [e].) The Legislature specifically did not impose upon an applicant a duty to make detailed and expensive studies of every conceivable alternative. On the other hand, the Legislature did not place solely upon objectors the burden of coming forward with alternative proposals. Rather, it struck a middle ground, mandating that the applicant produce descriptions of reasonable alternatives, and an explanation of why the alternatives are unsatisfactory. This, in our view, the applicant did. We may not impose a stricter requirement, one implicitly rejected by the Legislature, simply on the ground that the submission of impact studies on alternatives would better serve public policy. That argument is more appropriately addressed to the Legislature.
 

 As long as the commission developed a comprehensive record, as we believe it had, on the environmental impact of the line to be certified, the statutory purpose has been fulfilled. (See Public Service Law, § 128, subd 1.)
 

 Accordingly, we would affirm the orders of the Appellate Division.
 

 Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
 

 Orders affirmed, with costs.