MERLIN ATWELL et al., Appellants, v POWER AUTHORITY OF THE STATE OF NEW YORK et al., Respondents. (Proceeding No. 1.)

In the Matter of UPSET, INC., Petitioner, v PUBLIC SERVICE COMMISSION et al., Respondents. (Proceeding No. 2.)

In the Matter of POWER AUTHORITY OF THE STATE OF NEW YORK, Petitioner, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent. (Proceeding No. 3.)

Third Department, April 19, 1979

### APPEARANCES OF COUNSEL

*The Clements Firm (Mahlon T. Clements* of counsel), for Merlin Atwell and others, appellants.

*Lewis R. Bennett (Vito J. Cassan, Charles M. Pratt, Francis Bergan* and *Francis X. Wallace* of counsel), for Power Authority of the State of New York, petitioner in Proceeding No. 3 and Power Authority and others, respondents in Proceedings No. 1 and No. 2.

*Peter H. Schiff (John C. Crary, Roberta A. Simpson* and *John W. Dax* of counsel), for Public Service Commission of the State of New York and another, respondents.

*Louis J. Lefkowitz, Attorney-General,* for William C. Hennessy and another, respondents.

### OPINION OF THE COURT

GREENBLOTT, J.

#### PROCEEDING NO. 1

On August 24, 1977, plaintiffs commenced an action seeking

declaratory and injunctive relief against the continued construction of a 765 kV transmission line. The first cause of action[1] alleges that the resolution of need of the Power Authority of the State of New York (PASNY), dated July 11, 1973, was without statutory authority. The gravamen of this action is that the resolution's declared intention to use the proposed lines to transmit energy from Quebec to New York State disclosed a purpose not authorized by the Public Authorities Law.

■ Before discussing the merits of plaintiffs' first cause of action it is necessary that we note that the complaint does not challenge PASNY's right to declare a need for transmission facilities (Public Authorities Law, § 1005) comprising a single circuit 765 kV line between Canada and New York State, but, rather, challenges its statutory authority to construct and transmit through such a line power that is not generated in this State. Accordingly, we conclude that in this proceeding (unlike Proceedings Nos. 2 and 3 hereinafter discussed) plaintiffs are not confined to a proceeding initiated in this court by petition in accordance with the provisions of section 128 of the Public Service Law. It follows, therefore, that plaintiffs' action was properly commenced below and this appeal must be determined on the merits of the issue raised by the pleadings.

■ ■ Review of the applicable provisions of the Public Authorities Law persuades us to the view that Special Term's dismissal of the first cause of action of the complaint must be affirmed. Section 1005 of the Public Authorities Law grants to PASNY power to contract with and co-operate with Canadian authorities to effectuate the development and enhancement of hydroelectric power and projects related thereto. Plaintiffs' contention that section 1001 of the Public Authorities Law confines the development of power and energy by PASNY solely to the natural resources of the Niagara and St. Lawrence Rivers is meritless when section 1001 is juxtaposed to subdivision 7 of section 1005 of the same law, which specifically authorizes PASNY "to undertake the construction of any project in one or more steps as it may find economically desirable or advantageous, and as it may *agree with the appropriate Canadian and/or United States authorities"* (em-

---

1. The appeal is only from the dismissal of the first cause of action by Special Term.

phasis added). Further, the third unnumbered paragraph in section 1005 of the Public Authorities Law specifically authorizes PASNY to construct and/or acquire transmission facilities which would assist in the supply of electricity to Metropolitan New York City. While some limitation is imposed by section 1005 as to PASNY's employment of power generated from *acquired* facilities in Metropolitan New York City and its environs, no such proscription is stated or can be inferred on PASNY's right to *construct* transmission lines anywhere in the State for the purpose of maintaining an adequate energy supply in New York City. Patently, no statutory limit is placed on the location of the energy source that shall energize *constructed* transmission lines. Next, even though the July 11, 1973 resolution of need predated the enactment of the third unnumbered paragraph of section 1005 of the Public Authorities Law (L 1974, ch 370, § 1, eff May 17, 1974), said enactment effectively ratified the administrative determination of July 11, 1973 (cf. *City of Albany v McMorran,* 16 AD2d 1021). Accordingly, the order should be affirmed.

PROCEEDING NO. 2

Resolution of the merits of this proceeding pursuant to section 128 of the Public Service Law, preliminarily requires disposition of several procedural issues raised in PASNY's application to dismiss the proceeding as jurisdictionally defective.[2]

PASNY initially contends that the review mechanism described in section 128 is, in actuality, a special proceeding commenced in this court under CPLR article 78. We disagree. This position ignores subdivision 3 of section 128 which succinctly states that *"[e]xcept as herein provided* article seventy-eight of the civil practice law and rules shall apply to appeals taken hereunder." (Emphasis added.) Such an exception for review by aggrieved parties in this court of Public Service Commission (Commission) orders relating to the construction of power transmission lines is definitively set forth in subdivision 1 of section 128. Consequently, there was no need for petitioner UPSET, Inc. (UPSET) to personally serve a verified petition or follow any of the other requirements of article 78 with regard to commencement of a section 128 proceeding in

---

2. By decision dated *December 19, 1978,* we deferred determination of PASNY's motion until argument on the merits of the three proceedings herein. We also required all parties to submit briefs on the merits.

this court. Petitioners filed a petition, together with proof of service of a demand upon the Commission to file with this court a copy of written transcript of the record of the proceedings before it and a copy of its order and opinion. A copy of all papers so filed was served by mail on the Commission and PASNY, and both filing and service were completed within 30 days of the Commission's denial of reargument on October 13, 1978. Nothing more is required by section 128.

■ The second procedural issue is novel and presents a matter of first impression, the resolution of which is important to future efforts by PASNY to upgrade the generation and transmission of power in this State to meet what presently appears to be ever increasing needs. In this proceeding, UPSET named PASNY as an additional party respondent in an attempt to have this court review PASNY's initial determination of need dated July 11, 1973. Since that determination of need is conclusive as to the Commission (Public Service Law, § 126, subd 1, par [g]), PASNY contends that review of that which is "conclusive" and "binding" makes no sense. Such a review, the argument continues, would be more appropriate prior to an application to the Commission for a certificate. Such a preliminary review, PASNY insists, should have been obtained in an article 78 proceeding timely commenced at nisi prius after PASNY's declaration of need pursuant to section 1005 of the Public Authorities Law. We find this reasoning unpersuasive.

The four-month Statute of Limitations (CPLR 217) only begins to run after the determination to be reviewed becomes final and binding, i.e., when the decision or action has an actual impact on the person allegedly aggrieved (8 Weinstein-Korn-Miller, NY Civ Prac, par 7804.02; 24 Carmody-Wait 2d, NY Prac, § 145:239; *Matter of Gargiul v Board of Educ.*, 54 AD2d 1085, 1086, mot for lv to app den 41 NY2d 802). The determination of need by PASNY in July, 1973 had no impact on UPSET or any of its individual members, nor could it have had any "impact" or have been "final" and "binding" until the proposed route had been approved, easements obtained and construction of the line authorized. Further, since there are no requirements in section 1005 of the Public Authorities Law that PASNY must give any type of notice regarding its determination of need, a conclusion that UPSET is barred from bringing this proceeding because it did not challenge PASNY's determination within four months of the declaration

thereof raises serious due process constitutional questions. However, we need not discuss constitutional requirements of an administrative body with respect to the giving of adequate notice to those affected by its determination, it only being necessary to refer to article 7 of the Public Service Law, wherein it is declared to be a State purpose to provide a forum in which a single proceeding, open to citizens, groups, municipalities and other public agencies, can be conducted. It would be violative of that purpose to infer that the Legislature intended to countenance delay by permitting each facet of the location and construction of electric and gas transmission facilities to be challenged in article 78 proceedings (see L 1970, ch 272, § 1).

■ Next, PASNY's contention that section 128 of the Public Service Law does not permit review of any agency determination other than those of the Commission, and that, accordingly, its determination of need is nonreviewable and, therefore, absolute, is without merit. Analysis of section 128, with the legislative purpose in mind, persuades us to the view that PASNY's position is at war with that purpose. In an application for a certificate by any utility other than PASNY, the Commission "shall find and determine the basis of the need for the facility" (Public Service Law, § 126, subd 1, par [a]). It follows, therefore, that such determination of need is reviewable in a section 128 proceeding. The exception where PASNY is the applicant is doubtlessly premised on the fact that PASNY, unlike most other power utilities across the State, is a State agency and it would be a duplication of efforts to require two State agencies to make an identical determination, a procedure that could be fraught with ambiguities should each agency reach opposite conclusions. It follows, therefore, that article 7 of the Public Service Law (added by L 1970, ch 272), insofar as it deals with maintaining a continuous and adequate supply of power in this State, is an extension of the expression of legislative intent first set forth in section 1001 of the Public Authorities Law (L 1939, ch 870, as amd by L 1951, ch 146, § 1; L 1968, ch 294, § 1, eff May 21, 1968; L 1972, ch 489, § 1; L 1974, ch 369, § 1; L 1975, ch 864, § 9; L 1976, ch 482, § 4; L 1978, ch 644, § 1) that PASNY and other utilities which constitute the New York power pool exchange data and otherwise co-operate to the end that maximum power be made available to the people of this State at the least cost and with minimum delay. It would defeat such a

purpose to juxtapose PASNY's authority to determine need (Public Authorities Law, § 1005) together with its conclusiveness on the Commission (Public Service Law, § 126, subd 1, par [g]) so as to entirely remove from article 7 the question of need whenever PASNY is the applicant for a certificate. Further evidence that the legislative purpose is to encompass within a single proceeding (Public Service Law, § 128) all issues, including need, is discernible in the amendment to section 4 of the Condemnation Law barring litigation on the issue of need for the taking of property for a utility transmission line until such time as the Commission has issued a certificate of environmental compatibility and public need (L 1972, ch 285, § 5, eff July 1, 1972, repealed by L 1977, ch 839, § 2, eff July 1, 1978). Clearly where a utility other than PASNY is involved and condemnation is necessary, the Condemnation Law, as amended, relegates the issue of need to the Commission certification hearing (Public Service Law, § 128; cf. *County of Orange v Public Serv. Comm.*, 39 AD2d 311, 317, affd 31 NY2d 843). We see no reason to hold otherwise where, as here, PASNY is the certificate applicant.

■ Having concluded that PASNY's resolution of need is only reviewable in a section 128 proceeding in this court, we are constrained to reject PASNY's further contention that review is barred by the doctrine of *res judicata,* UPSET having previously raised the same issue in an article 78 proceeding which was dismissed at Special Term as time-barred. No appeal was taken. However, since need is only reviewable in the section 128 proceeding presently before us, we must only apply the time requirements of section 128, and with those UPSET has complied.

Turning to the merits of this proceeding, we note that the issues of "jurisdiction", "right of way", "noise complaint" and "research" raised by UPSET herein are fully discussed in Proceeding No. 3. Accordingly, our review is refined to a consideration of the allegations of arbitrariness and capriciousness in connection with the cost of the transmission facility and the degree of electric shock alleged to be created by its energization.

■ UPSET contends that PASNY acted arbitrarily and capriciously in not deciding to pursue development of a New York State power production facility located in southeastern New York as a viable alternative to construction of the subject line. It is urged that development of the existing

facility could have resulted in savings of $156,425,000 in 1978 discounted dollars. This contention is premised on the fact that after 1981 energy charges to PASNY by Hydro-Quebec are to be negotiated annually and, given rising inflation factors and declining dollar values, it is reasonable to expect that actual costs will far exceed those chargeable to a development of the existing facility in the southern tier of the State. PASNY responds that UPSET's dollar figures are inaccurate because they are dependent on estimated rather than actual costs of energy during the years 1981 to 1997. The actual costs, PASNY contends, will be determined in negotiations yet to be held, which, when held, will be conducted within the constraints of a contractual agreement that compels the parties (PASNY and Hydro-Quebec), in the absence of an agreement as to costs, to exchange energy so that PASNY would take its maximum requirement during the high costs summer peak demand of New York City when otherwise highly inefficient gas turbines would have to be operated in New York State and then return a like amount of energy during the off-peak winter periods when Canada's needs are greater and when such energy could be generated at less cost. Further, the importation of energy from Quebec will accomplish a desirable purpose by eliminating the need for the construction in this State of a polluting baseload plant, either nuclear or fossil fired. Such considerations with respect to costs and environment are neither arbitrary nor capricious.

■ The remaining issue raised by UPSET in this proceeding is that the Commission erred in setting transmission line clearances at inadequate heights, thereby enhancing the probability that electric fields surrounding such lines will induce an electric charge injurious to humans who might touch objects so charged while they were partially or fully grounded. Initially, we note that UPSET did not raise the issue of inadequate clearance in its petition for rehearing. Subdivision 1 of section 128 of the Public Service Law provides that no objection that has not been urged by a party in the application for rehearing shall be considered by the court, unless such failure shall be excused because of extraordinary circumstances. While "extraordinary circumstances" may be construed to relate to the reasons for the failure to raise an issue, and UPSET advanced none, we choose to interpret the phrase as also relating to the substance of the issue and proceed to consider the issue of potentially fatal electric shock caused by

transmission lines passing over public ways at inadequate heights.

■ Expert testimony revealed that current from 2 to 4 mA (milli amperes) will cause a "startle reaction" in humans and that currents of 9 mA and 6 mA are safe for men and women while a level of 4.5 mA would be safe for children. Since the Commission set clearance requirements at 63 feet over improved public roads, 52 feet over private roads and 48 feet over all other areas, the only way in which a current level could exceed 4.5 mA and be possibly injurious would be for a small child to touch a large grounded metal object parked within a right of way under a line having a 48-foot clearance at a time when the line was carrying maximum voltage. Accordingly, we conclude that the credible expert testimony supporting the Commission's conclusion that the established clearances obviate danger to humans except in the highly remote, almost impossible combination of circumstances recited above, compels our confirmance of that conclusion. It is supported by substantial evidence in the record.

### PROCEEDING NO. 3

■ In this proceeding pursuant to section 128 of the Public Service Law, PASNY objects to the conditions upon which the certificate of environmental compatibility and public need was granted, arguing in the alternative that the Commission lacked jurisdiction to impose such conditions and that the record does not contain substantial evidence to support the imposition of such conditions. The Commission posits the novel argument that PASNY is somehow barred from objecting to the conditions since it failed to object when the Commission issued its interim orders authorizing construction but reserving the right to later impose conditions it might deem appropriate. We reject this argument since PASNY could not reasonably have been expected to object to the mere possibility that conditions would be imposed in the future.

PASNY objects to the "right of way" conditions upon the ground that they are unsupported by substantial evidence and are outside the scope of the Commission's jurisdiction. We disagree.

The Commission found that although the evidence did not establish that continuous or long-term exposure to the electric or magnetic fields of the proposed 765 kV transmission lines would cause harmful biological effects, it did give rise to

inferences of possible risks which could not be ignored. Such a finding is amply supported by testimony of staff witness Frey, Dr. Marino and Dr. Becker and documentary evidence discussed in Opinion No. 78-13, and the question of the credibility of that evidence was for the Commission. To protect the public from these possible risks, the Commission determined that the electric field at the edge of the right of way should be no greater than that at the edge of the right of way of standard 345 kV lines. The Commission found that under ideal conditions a 300-foot-wide right of way would yield the desired result, but that such factors as land contours and line height would create variations which could be minimized by an addition of 50 feet to the right of way. It cannot be said that this reasoning, in a field in which the Commission has expertise and has been charged with the responsibility of the health and safety of the public, is arbitrary, capricious or irrational. The Commission's determination allows the operation of a needed transmission line while minimizing the likelihood of harm to the public by limiting its exposure to that to which it has previously been exposed.

As a result of its findings regarding desirable right of way width, the Commission imposed as a condition upon operation of the facility at 765 kV the requirement that PASNY acquire certain permanent and temporary rights within a 350-foot right of way. PASNY's argument that these requirements are beyond the Commission's statutory power as well as infringing upon its power of eminent domain is without merit. Subdivision 1 of section 126 of the Public Service Law empowers the Commission to certify a transmission line "upon such term, conditions, limitations or modifications of the construction or operation of the facility as the commission may deem appropriate". We conclude, therefore, that the Commission has the power to condition authorization of a transmission line upon acquisition of a sufficiently wide right of way to protect against risks posed by the line.

We agree, however, with PASNY's position that the Commission lacked authority to order it to acquire real property because of noise complaints.

Paragraph 2(c) of the Commission's order provides that where a noise complaint made by an owner of a house located within 600 feet of the center line of the certified route cannot be satisfactorily resolved, the Commission "may require PASNY to offer to purchase or move that house". The order

further provides that "this option shall exist for a period of 18 months from the date on which the 765 kV transmission line is made fully operational, but the Commission reserves the right to extend that 18-month period if weather conditions during it should be unusually dry enough to preclude a proper assessment of the lines' audible noise. The resale by PASNY of any such house shall be on notice to the buyer of the events that resulted in PASNY's having acquired it".

The Commission has created a scheme whereby it denominates itself as the sole arbiter of the reasonableness of claims by landowners that annoying sounds emanate from the transmission line. Thus, the Commission attempts to reserve to itself the right to determine the existence of a nuisance. It even attempts to extend its power to the point of requiring PASNY to purchase real property of a complainant.

Article 7 does not authorize the Commission to determine what constitutes a nuisance or provide a remedy for it. Nuisances should only arise under recognized legal principles, and should be dealt with by judicial bodies or by administrative agencies duly authorized by the Legislature (*Lawton v Steele*, 119 NY 226, affd 152 US 133). It is highly improper for the Commission to foreclose the jurisdiction of the courts on this issue and limit the parties to a presentation of their case before the Commission. In our view, PASNY has been deprived of its right to judicial determination of these issues, which should only result from an enactment of the Legislature, and not from an administrative fiat without basis in law.

A literal reading of the Commission's noise order compels the conclusion that any noise from the transmission line, no matter how small, constitutes a compensable taking. The Commission attempts to ameliorate the harshness of this condition by stating that should PASNY convince the Commission that the noise complaint is unfounded or wholly unreasonable, the Commission will not require the purchase of the house involved. We note that this wording, as well as the language of the order itself, compels us to conclude that inadequate standards have been established by the Commission to determine the conditions under which the noise order shall take effect. Regardless of the adequacy of the standards imposed, however, whether PASNY should be required to purchase or move a house near the right of way is an issue which should be determined solely by the courts, not by the

Commission. Nothing in article 7 grants such far-reaching authority to the Commission.

▮ Likewise, we hold that the Commission has no authority to require PASNY to participate in a research program as a condition of certification. The Commission has only those powers conferred by statute and those "which are incidental to the exercise of such powers * * * or necessarily implied therefrom" *(Matter of Public Serv. Comm. of State of N. Y. v Jamaica Water Supply Co.,* 54 AD2d 10, 11, affd 42 NY2d 880). Article 7 does not expressly authorize imposition of a research program as a condition of a certificate, and while subdivision 1 of section 126 of the Public Service Law authorizes the Commission to condition the granting of a certificate upon "such terms, conditions, limitations or modifications of the construction or operation of the facility as [it] may deem appropriate", we find nothing in this language which remotely suggests that the Commission has the authority to order a research program *after* final certification. In our view, if the Commission had doubts concerning the health and safety aspects of the transmission line, then it should not have granted final certification until those doubts were resolved. Furthermore, we are of the view that had the Legislature intended to vest the Commission with such authority, it specifically would have done so as it did in the enactment of subdivision 4 of section 18-a of the Public Service Law, which expressly permits assessment against PASNY of the cost of such a research program prior to certification.

▮ Finally, PASNY challenges the manner in which the Commission allocated the burden of proof to impose upon those who object to the proposed facility the burden of going forward and suggesting potential hazards and then, once that burden has been met, to impose upon the applicant the burden of refuting the inferences of harm or showing that the likelihood of harm is so small as to be insignificant. We find this procedure reasonable and well within the discretionary power of the agency (see *Vermont Yankee Nuclear Power Corp. v Natural Resources Defense Council,* 435 US 519). The remainder of PASNY's arguments have been considered, and we find them to without merit.

In Proceeding No. 1, the order should be affirmed, without costs; in Proceeding No. 2, the determination should be confirmed and the petition dismissed, without costs; and in Proceeding No. 3, the determination should be modified by an-

nulling paragraphs 2(c) (as amended by the Commission's October 13, 1978 order) and 2(d) of the Commission's order in Opinion No. 78-13, issued June 19, 1978, and, as modified, confirmed, without costs.

MAHONEY, P. J. (concurring in part and dissenting in part). We concur with the majority except insofar as it concludes that the Commission lacked authority to impose the noise complaint and research program conditions. Before discussing these conditions, however, it must be noted that the so-called "partial certificates" issued by the Commission during the various stages of the hearing on PASNY's application for a certificate of environmental compatibility and public need present a substantial issue which has been raised in the past.[1] While a resolution of this issue would not affect the validity of the Commission's final order, which is the subject of these proceedings, we are of the view that the issue should be addressed at this time in order to clarify the Commission's powers under article 7 of the Public Service Law and provide guidance for future proceedings.

In enacting article 7 of the Public Service Law, entitled Siting of Major Utility Transmission Facilities, the Legislature found, *inter alia,* "that present practices, proceedings and laws relating to the location of such utility facilities may be inadequate to protect environmental values, and take into account the total cost to society of such facilities, and have resulted in delays in new construction and increases in costs which are eventually passed on to the people of the state in the form of higher utility rates and the possible threat of the inability of the public and investor-owned utilities to meet the needs of the people of the state for economic and reliable utility services" (L 1970, ch 272, § 1). Accordingly, the purpose of

---

1. In *Matter of Upset v Public Serv. Comm.* (57 AD2d 208) the petitioner commenced a proceeding pursuant to section 128 of the Public Service Law challenging the Commission's power to issue interim orders authorizing site clearance, construction of access roads and erection of support structures and conductors, but this court held that the procedures contained in section 128 were limited to review of the final order granting or denying a certificate of environmental compatibility and public need. In *Matter of Simonds v Power Auth. of State of N. Y.* (64 AD2d 746) the petitioners commenced an article 78 proceeding, relying upon certain language in *Upset (supra,* p 211), seeking to prohibit PASNY from further construction before the issuance of a certificate of environmental compatibility and public need. The appeal from so much of Special Term's judgment as enjoined PASNY from further construction was rendered moot by the Commission's order, dated June 19, 1978, which granted, upon certain conditions, the required certificate.

article 7 was declared to be "to provide a forum for the expeditious resolution of all matters concerning the location of electric and gas transmission facilities presently under the jurisdiction of multiple state and local agencies including the courts of the state, and all matters of state and local law, in a single proceeding to which access will be open to citizens, groups, municipalities and other public agencies to enable them to participate in these decisions" *(id.).* In contrast to this simplistic procedure envisioned by the Legislature, a review of the background regarding the proposed facility at issue here, which is summarized in *Matter of Simonds v Power Auth. of State of N. Y.* (64 AD2d 746, *supra),* reveals a multifaceted proceeding requiring numerous hearings, punctuated by several interim orders or "partial certificates" issued by the Commission which prompted a number of lawsuits. Now, some five years after the initial application, the Commission's opinion and order granting a certificate of environmental compatibility and public need for the proposed facility to the Power Authority of the State of New York (PASNY) has been issued by the Commission, resulting in the proceedings which are now before us. While the complexity and novelty of the technology and environmental impact of 765 kV electric transmission lines, as proposed by PASNY, coupled with the impact of inflation on equipment and construction costs, may have provided the Commission with a basis in reason for issuing interim orders authorizing site clearance, construction of access roads and erection of support structures and conductors during the pendency of hearings on the health and safety aspects of 765 kV transmission lines, we believe that such interim orders are not authorized by article 7.

The procedure before the Commission mandated by article 7 was succinctly outlined by Mr. Justice BENJAMIN in *County of Orange v Public Serv. Comm. of State of N. Y.* (39 AD2d 311, affd 31 NY2d 843) and need not be repeated here. In our view, the key requirements are those contained in sections 121 and 126 of the Public Service Law. Section 121 precludes the commencement of construction prior to the issuance of a certificate of environmental compatibility and public need, and pursuant to subdivision 1 of section 126, the certificate may not be issued unless the Commission makes findings as to certain matters, including the basis of need for the facility and the nature of the probable environmental impact. Where, as here, PASNY is the applicant, its determination of neces-

sity pursuant to section 1005 of the Public Authorities Law is conclusive on the Commission (Public Service Law, § 126, subd 1, par [g]), but this does not obviate the requirement of the remaining findings, particularly those relating to environmental impact, as conditions precedent to the issuance of the certificate. In order for the statutory purposes to be fulfilled, the Commission must develop a comprehensive record on the environmental impact of the line to be certified (Tyminski v Public Serv. Comm. of State of N. Y., 38 NY2d 156, 160), and since the Commission's interim orders were issued prior to the completion of the hearings on the health and safety aspects of the proposed facility, this requirement clearly had not been met. It necessarily follows that findings as to the environmental impact of the proposed facility were not complete and, accordingly, a certificate could not have been granted (Public Service Law, § 126, subd 1) and construction could not have been commenced (Public Service Law, § 121, subd 1).

The Commission's actions cannot be justified upon the theory that since the Commission had conceded that approval of the lines at some voltage would not be denied, the interim orders, in essence, granted the certificate "upon such terms, conditions, limitations or modifications of the construction or operation of the facility as the commission may deem appropriate" as authorized by subdivision 1 of section 126. In Opinion No. 76-12, granting construction authorization on June 30, 1976, the Commission explained "we are here preserving fully our opportunity to take all precautions on grounds of health and safety as the completed Common Hearings will demonstrate to be necessary", thereby conceding that it did not yet know what conditions it would impose. A conclusion that subdivision 1 of section 126 authorizes the Commission to issue a certificate upon the condition that it will later impose conditions it deems appropriate is a fiction which cannot be tolerated and would be in direct conflict with the stated legislative purpose of article 7.

County of Orange v Public Serv. Comm. of State of N. Y. (supra) does not support the Commission's interim orders. There, the court approved the Commission's decision to certify the north-south leg of a proposed transmission facility while severing the east-west leg and remanding for a rehearing. With respect to the north-south leg, the Commission had made findings as to need, environmental impact and other matters required by subdivision 1 of section 126 which the court

reviewed and sustained. Accordingly, *County of Orange* must be read as authorizing certification of geographical segments of a proposed facility where appropriate, but only if the Commission has made all of the findings required by subdivision 1 of section 126 with respect to the segment to be certified.

Finally, the conclusion that under certain circumstances the Commission may issue interim orders authorizing construction of a proposed facility prior to the issuance of the final order granting or denying the certificate not only is contrary to the express language of the statute as discussed above, but also ignores the possibility of having a facility constructed before there can be any judicial review of the Commission's determinations on such issues as whether the location and routing of the transmission line are compatible with the requirement that the facility represent the minimum adverse environmental impact (see Public Service Law, § 126, subd 1, par [a]). With the facility already constructed, judicial review of the Commission's determination on such an issue after the final order granting the certificate would be academic; a result clearly not intended by article 7. The distinction between "any order" and the "final order" in section 128 of the Public Service Law simply recognizes the authority of the Commission to issue orders relative to the procedural aspects of the hearing upon an application for a certificate and cannot be read as allowing the Commission to authorize construction of a facility prior to the issuance of the final order granting or denying the certificate contrary to the requirements of subdivision 1 of section 121 of the Public Service Law.

As to the noise complaint condition, we are of the view that the majority's interjection of the common-law tort of nuisance has obscured the two real issues, i.e., whether the Commission may impose a condition seeking to minimize the possibility of harmful effects from the noise generated by the facility and, if so, whether the particular condition herein is reasonably related to that purpose. As noted by the majority, the Commission is empowered to grant or deny an application as filed or to grant it "upon such terms, conditions, limitations or modifications of the construction or operation of the facility as the commission may deem appropriate" (Public Service Law, § 126, subd 1), and conditions which seek to minimize the impact of the facility on the environment fall within this broad delegation of discretionary power (see *Matter of Niag-*

*ara Mohawk Power Corp. v Public Serv. Comm. of State of N. Y.*, 54 AD2d 225, 227). Clearly, harmful effects from noise generated by a facility are a component of its environmental impact and, accordingly, the first issue must be answered in the affirmative.

As to the second issue, the Commission found that during foul weather the noise level of the lines inside homes located within 600 feet of the centerline will be above what it found to be the preferred level for bedrooms. This conclusion is supported by the testimony of staff witness Dr. Kryter as to the noise range for sleep interference, and PASNY's own witness admitted that the level chosen by the Commission "has often been recommended for bedrooms by acoustical consultants." Accordingly, the Commission imposed a condition which requires PASNY to report all noise complaints to the Commission and to attempt to resolve all such complaints and further provides that if the complainant's home is located within 600 feet of the facility's centerline and the complaint cannot otherwise be resolved, the Commission can require PASNY to move or offer to purchase the home. We find this rather unique condition an eminently reasonable mechanism for dealing with the possibility of audible noise complaints, particularly since this State has had no previous operational experience with high voltage transmission lines of this magnitude.

The evidence regarding the noise generated by the facility does not support a finding that the health and safety of occupants of homes located outside the proposed right of way would definitely be adversely affected by the noise and, thus, the Commission would not have been justified in widening the right of way on the basis of noise. On the other hand, the evidence does establish that under certain circumstances the noise level within 600 feet of the centerline will be above the preferred level for bedrooms and will, therefore, disrupt the sleep of some people within those limits. Accordingly, the Commission was amply justified in taking some steps to minimize the impact,[2] and since the degree of that impact will

2. By annulling the noise complaint condition, the majority's holding leaves home-owners and occupants within 600 feet of the centerline unprotected despite the fact that the Commission's underlying finding regarding sleep disruption remains undisturbed. Even assuming the validity of the majority's reasoning as to the noise complaint condition, the matter should, at the very least, be remanded to the Commission for further consideration as to a more appropriate condition.

vary for each individual exposed to that noise level, the Commission's decision to proceed on a case-by-case basis is neither arbitrary nor capricious.

The majority's suggestion that the noise complaint condition authorizes the Commission to act on a complaint, regardless of the noise level, ignores the Commission's use of 35 dB (A) as the preferred noise level for bedrooms. Logic dictates that any noise level less than 35 dB (A) would not trigger the Commission's intervention. The further suggestion by the majority that the Commission lacks the authority to compel PASNY to purchase property is diametrically opposed to its affirmance of the right of way condition which requires PASNY to acquire permanent and temporary rights over thousands of acres.

With regard to the research program condition, we are of the view that a utility which proposes to employ technological advances in the transmission of electricity should share in the cost of ascertaining fully the health and safety impact on the public, particularly where, as here, the Commission finds that while conclusive data is absent, there are unrefuted inferences of possible biological effects. The research program is aimed at ascertaining the nature and probability of these effects and to minimize the risks involved. Accordingly, this condition falls within the broad delegation of discretionary power contained in subdivision 1 of section 126 of the Public Service Law.

The majority concedes that pursuant to subdivision 4 of section 18-a of the Public Service Law the cost of such a research program conducted *prior* to certification could be assessed against PASNY as a cost of the investigation of its request to establish the facility, but concludes that the statute must be construed literally so as to prohibit such an assessment *after* certification. Such a literal construction would unduly restrict the Commission in its exercise of the discretionary powers delegated to it by article 7 of the Public Service Law. Pursuant to those powers, the Commission could have denied certification pending conclusive evidence rebutting the inferences of possible health and safety risks of 765 kV transmission lines and, as noted above, the cost of obtaining such evidence would have been borne by PASNY. Instead, the Commission chose to grant certification with certain conditions aimed at minimizing the possible risks and a further condition requiring PASNY to contribute toward a research program to study the biological effects of the facility. Logic impels us to conclude that such a choice was within the

Commission's powers. As with the other conditions, the research program condition constitutes a reasonable approach to the balancing of the need and desirability of the proposed facility, together with the cost of further delays in construction, against the necessity of minimizing the environmental impact of the facility, including its effect on the health and safety of the public. Such a balancing is precisely what the Legislature intended when it enacted article 7 of the Public Service Law.

SWEENEY and MAIN, JJ., concur with GREENBLOTT, J.; MAHONEY, P. J., and KANE, J., concur in part and dissent in part in an opinion by MAHONEY, P. J.

In Proceeding No. 1, order affirmed, without costs; in Proceeding No. 2, determination confirmed and petition dismissed, without costs; and in Proceeding No. 3, determination modified by annulling paragraphs 2(c) (as amended by the Commission's October 13, 1978 order) and 2(d) of the Commission's order in Opinion No. 78-13, issued June 19, 1978, and, as modified, confirmed, without costs.