OPINION OF THE COURT
Frederick B. Bryant, J.
On August 13, 1973, the Niagara Mohawk Power Corporation and the New York State Electric and Gas Corporation filed an application with the Public Service Commission (hereafter PSC) for a "certificate of environmental compatibility and public need” pursuant to article 7 of the Public Service Law to obtain authorization for the construction and operation of the Lafayette-Oakdale transmission facility (hereafter L/O). After extensive public hearings, the PSC on March 22, 1976 issued opinion and Order No. 76-6, (Case No. 26482) granting the certificate subject to numerous conditions set forth therein, for the L/O 345-kilovolt transmission facility.
On July 14, 1977 a petition to reopen Case No. 26482 was presented to the PSC on the ground that inadequate consideration had been given to the health and safety aspects of the transmission facility. The PSC denied the petition by an order issued December 6, 1977 which stated in part that the PSC was presently holding common record hearings on the biological effects of high-voltage transmission lines and that upon completion of health and safety investigation it would apply the findings and determinations to all certified 345-kilovolt lines, including L/O and would require the utilities operating comparable transmission facilities to make adjustments that were found necessary to assure safe operation of high-voltage transmission facilities, including the L/O facility.
*704 In a notice issued on June 16, 1975, to all parties in cases pending under article 7 of the Public Service Law, the Commission advised that it was conducting an investigation of the specific environmental impacts of high-voltage transmission lines and that evidence developed in the record of that proceeding and determinations made there might be applicable to cases involving the construction of other overhead high-voltage transmission lines. "Parties who wished to speak to the issues described in that notice were invited to participate in the common record hearings, which were intended to be generic in scope”.
The petitioners herein have brought this proceeding pursuant to CPLR article 78 for a judgment:
"1) Directing the Respondents to hold public hearings to assist the Respondents to exercise supervision over and to regulate the public health aspects of the nonionizing electromagnetic radiation from the high voltage transmission line identified as the LaFayette-Oakdale 345 kV Transmission Facility (hereinafter referred to as L/O).
"2) Directing the Respondents to seek scientific testimony regarding the said public health aspects of the nonionizing electromagnetic radiation of the (L/O) line from the foremost authorities in the area of the biological effects of electromagnetic radiation.
"3) Directing the Respondents to perform or cause to be performed scientific experiments involving laboratory animals or human volunteers for the purpose of resolving all unanswered questions concerning the extent of the risk to health posed by the electromagnetic field of the (L/O) transmission line.
"4) Directing the Respondents to perform or cause to be performed a research program employing recognized scientific experts to respond to the specific questions raised in Dr. Marino’s statement annexed to the petition.
"5) Directing the Respondents to adopt and promulgate rules, regulations, and procedures to insure that the Petitioners will be protected from an unhealthy electromagnetic environment as a result of the operation of the (L/O) transmission line.
"6) Directing the Respondents to insure that all rules, regulations and procedures adopted and promulgated to protect Petitioners, and others, from an unhealthy electromag *705 netic environment as a result of the operation of the (L/O) transmission line shall be founded only on competent evidence adduced at forums open to the public, and, that the aforesaid rules, regulations, and procedures shall be openly arrived at.
"7) Directing the Respondents to abate the involuntary human experimentation upon the Petitioners’ bodies that will result from the operation of the said (L/O) line as presently planned.
"8) Directing the Respondents, pending performance of all acts specified in paragraphs XI)’ to X7)’ above, to prevent operation of the said (L/O) transmission line because such operation would:
"a. constitute a nuisance within the meaning of § 201 and § 1300 of the Public Health Law; and "b. constitute human experimentation on the bodies of the Petitioners within the meaning of Article 24-A of the Public Health Law, and, inter alia, the Petitioners have not given informed consent for such experiments.
"c. result in the injection of a hazardous substance into the environment within the meaning of Article 37 of the Public Health Law which will seriously endanger the health of the Petitioners; and
"d. constitute serious state action violating the Petitioners’ constitutional right to the equal protection of the law as guaranteed by Article 1, Section 11 of the Constitution of the State of New York and under the Fourteenth Amendment— Section 1 of the Constitution of the United States.
"e. constitute serious state action violating the Petitioners’ right to due process under the law as guaranteed by Article I, Section 6 of the Constitution of the State of New York and under the Fourteenth Amendment, Section 1 of the Constitution of the United States.
"f. and for such other and further relief as may be just.”
The respondents David Axelrod, M.D., New York State Commissioner of Health; New York State Department of Health; New York State Public Health Council; Robert F. Flacke, New York State Department of Environmental Conservation Commissioner; and New York State Department of Environmental Conservation (hereinafter State respondents) have moved for an order pursuant to CPLR 7804 (subd [f]):
"I. Dismissing the petition as to David Axelrod, M.D., New York State Commissioner of Health; New York State Depart *706 ment of Health; New York State Public Health Council; Robert F. Flacke, New York State Department of Environmental Conservation Commissioner; and New York State Department of Environmental Conservation (hereinafter 'State respondents’) on the grounds that:
"A. The Supreme Court of the State of New York lacks subject matter jurisdiction of this proceeding by virtue of the provisions of Article VII of the Public Service Law;
"B: Article VII of the Public Service Law expressly precludes the named State respondents from asserting the regulatory powers over the Lafayette-Oakdale 345 kV Transmission Facility which petitioners seek to compel them to exercise in this proceeding;
"C. The extraordinary remedy of mandamus will not lie in this proceeding, since the petitioners seek to compel the performance by the State respondents of statutory powers which are purely discretionary.”
Cameron F. McRae, Broome County Commissioner of Health; and the Broome County Department of Health (hereinafter County respondents) have also moved to dismiss the petition on the same grounds enumerated in the State respondents’ motion.
The petitioners assert that the notice of motion of the County respondents was not timely served and urge this court to bar the County respondents from moving to dismiss and raising objections in point of law against the petition. The petitioners assert that their notice of petition and petition was served on the County respondents on March 8, 1979 and that the County respondents did not serve their motion papers until June 5, 1979.
The petition herein was originally noticed to be heard on April 3, 1979. By a series of adjournments the petition was scheduled to be heard on June 12, 1979. The County respondents served their motion papers on June 5, 1979 or seven days before the adjourned hearing date. The court concludes that this is a substantial compliance with CPLR 7804 (subds [c], [f]) which requires a motion to dismiss be served at least five days "before the time at which the petition is noticed to be heard”. By the adjournments the petition was noticed to be heard and was actually heard on June 12, 1979. If service on June 5, 1979 is an irregularity, it can be disregarded as petitioners have not asserted that any substantial right was prejudiced thereby. (CPLR 2001.) The court notes that the *707 County respondents base their motion to dismiss the petition on substantially the same grounds specified by the State respondents.
The petition must be dismissed.
The petitioners allege in paragraph 3 as follows: "3. The land which is the subject of this proceeding lies within Broome County, State of New York. All Petitioners united in interest herein, are owners of land and most are residents upon land over which new york state electric & gas corporation (NYSEG) and Niagara mohawk power corporation (N-M) have been authorized to construct and operate a high voltage transmission line identified as the LaFayette-Oakdale 345 kV Transmission Facility (hereinafter referred to as L/O). The application for said line was identified as Case No. 26482 before the New York State Public Service Commission.”
The PSC authorized the construction and operation of L/O in a proceeding pursuant to article 7 of the Public Service Law. Article 7 of the Public Service Law is a new article added by chapter 272 of the Laws of 1970, effective July 1, 1970.
The legislative findings which accompained the enactment of article 7 demonstrate that the Legislature intended to expedite hearings and determinations of applications for the location and construction of transmission facilities on a single proceeding before the PSC.
The findings provide in part that: "The legislature therefore hereby declares that it shall be the purpose of this act to provide a forum for the expeditious resolution of all matters concerning the location of electric and gas transmission facilities presently under the jurisdiction of multiple state and local agencies including the courts of the state, and all matters of state and local law, in a single proceeding to which access will be open to citizens, groups, municipalities, and other public agencies to enable them to participate in these decisions.” (L 1970, ch 272, § 1.)
The court notes that some 34 parties participated in the hearings leading to the decision of the PSC in Case No. 26482, including some of the petitioners in this proceeding. Carl R. Stannard,* who is the only petitioner named in the caption of *708 this proceeding and who verified the petition herein, was a party to the article 7 proceeding in Case No. 26482. The New York State Department of Environmental Conservation appeared in Case No. 26482 and is a respondent herein.
All the respondents claim that article 7 of the Public Service Law precludes this court from granting the relief sought by petitioners herein and, in fact deprives this court of "jurisdiction to hear and determine” this proceeding. The court agrees.
Direct judicial review of a decision of PSC in an article 7 proceeding is governed by section 128 of the Public Service Law and requires the proceeding to be brought in the Appellate Division of the Supreme Court. In fact, some aspects of the decision of PSC in Case No. 26482 were reviewed by the Appellate Division of the Supreme Court, Third Department, in Matter of Niagara Mohawk Power Corp. v Public Serv. Comm. of State of N. Y. (54 AD2d 225).
Article 7 clearly vests PSC with jurisdiction to determine all environmental hazards created by proposed transmission facilities. (Matter of Power Auth. of State of N. Y. v Public Service Comm., 67 AD2d 365.)
Subdivision 1 of section 126 of the Public Service Law provides in part:
"The commission may not grant a certificate for the construction or operation of a major utility transmission facility, either as proposed or as modified by the commission, unless it shall find and determine: * * *
"(b) the nature of the probable environmental impact;
"(c) that the facility represents the minimum adverse environmental impact, considering the state of available technology and the nature and economics of the various alternatives”.
The motion papers demonstrate that the PSC has considered and is continuing to consider the health hazards alleged to be created by L/O. The PSC has continuing jurisdiction over the construction, operation and maintenance of all utility transmission lines. (Public Service Law, § 66, subd 2; § 121, subd 1.)
Petitioners are attempting in this proceeding to raise issues concerning the alleged health hazards created by L/O. These are issues which were or could have been determined in the proceeding under article 7 and therefore cannot be considered by the court in this proceeding.
*709 Section 129 of the Public Service Law provides: "§ 129. Jurisdiction of courts. Except as expressly set forth in section one hundred twenty-eight and except for review by the court of appeals of a decision of, the appellate division of the supreme court as provided for therein, no court of this state shall have jurisdiction to hear or determine any matter, case or controversy concerning any matter which was or could have been determined in a proceeding under this article or to stop or delay the construction or operation of a major facility except to enforce compliance with this article or the terms and conditions of a certificate issued hereunder.”
Petitioners in this proceeding are not seeking a direct review of the determination of PSC granting the certificate of environmental capacity and public need for L/O. The PSC and the petitioners in Case No. 26482 have not been made parties to this proceeding.
The petitioners ask this court to compel the Departments of Health and Environmental Conservation to supervise, regulate and abate the alleged public health nuisance created by the nonionizing electromagnetic radiation issuing from L/O. The petitioners claim that, "Contemporaneous with and subsequent to that Order [in Case No. 26482], a large amount of scientific literature appeared which established beyond doubt that the electromagnetic field of the L/O line constituted a health risk, and that this Court may 'stop or delay the construction or operation’ of the L/O line to enforce compliance with this Article [Article VII].”
This court cannot do indirectly what it has no jurisdiction to do directly. This court can enforce compliance with article 7, but only in the manner specified in article 7, and not in this proceeding under CPLR article 78.
Petitioners’ new scientific evidence should be presented to PSC in an appropriate proceeding. As noted before, PSC is presently holding hearings on the biological effect of high-voltage transmission lines.
The respondents herein have authority to investigate alleged health hazards created by high-voltage transmission facilities. The court concludes that respondents’ evidence, if any, should likewise be presented to the PSC. Section 130 of the Public Service Law appears to exclude all State agencies from interfering with the construction or operation of a transmission facility for which the PSC has issued a certificate *710 pursuant to article 7 of the Public Service Law, except through an article 7 proceeding.
Petitioners herein seek a judgment in the nature of mandamus to compel "the Respondents to achieve an objective — the supervision, regulation and abatement of the public health nuisance resulting from the nonionizing electromagnetic radiation issuing from L/O 345,000 Volt Transmission Line”. Article 7 of the Public Service Law vests jurisdiction to supervise and regulate high-voltage transmission lines in the PSC and not respondents. Respondents certainly can become parties and be heard in any proceeding under article 7. Section 124 of the Public Service Law requires that the Department of Environmental Conservation be made a party to an article 7 proceeding. The motion papers show that the respondent Department of Environmental Conservation was a party to Case No. 26482 which certified L/O.
Even if this court had jurisdiction in this CPLR article 78 proceeding seeking to stop the construction and operation of L/O, this court is required to dismiss the petition.
The petitioners are seeking relief in the nature of mandamus to compel respondents as administrative State and municipal officers to exercise regulatory powers which are clearly discretionary.
The controlling principles are stated in Matter of Community Action Against Lead Poisoning v Lyons (43 AD2d 201, 202-203, affd on opn of the Appellate Division 36 NY2d 686) as follows: "It is fundamental that the remedy sought here is extraordinary and that: 'the judiciary is loathe to interfere with the executive department of the government in the exercise of its official duties, unless some specific act or thing which the law requires to be done has been omitted.’ [Citations omitted.] Moreover, mandamus is not available 'to compel a general course of official conduct or a long series of continuous acts’, performance of which it would be impossible for a court to oversee [citations omitted], and is particularly inappropriate where a relevant statutory duty involves the exercise of judgment and discretion [citation omitted]. When it is granted, the order 'must command precisely what the party is required to do, and no more than he is legally bound to do’. [Citations omitted.]”
In the instant proceedings, the petitioners seek to compel respondents to perform a general course of official conduct or a long series of continuous acts most of which involve judg *711 ment and discretion. The course of conduct sought is heretofore set forth and no useful purpose will be served by repeating it here.
The petition is dismissed without costs.

 [2] The other petitioners were identified on Exhibit A attached to the petition. The names of all the petitioners should appear in the caption of the petition. (CPLR 103, subd [b]; 105, subd [b]; 402; 2101, subd [c].) This is an irregularity which can be disregarded under the circumstances. (CPLR 2001.)