In the Matter of DELAWARE COUNTY CITIZENS OPPOSED TO POWERLINE ROUTE ALTERNATIVES, Petitioner, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents. (Proceeding No. 1.)

In the Matter of RICHARD I. COOMBE, Petitioner, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents. (Proceeding No. 2.)

In the Matter of LUCY BIASE et al., Petitioners, v NEW YORK POWER AUTHORITY et al., Respondents. (Proceeding No. 3.)

Third Department, November 26, 1986

### APPEARANCES OF COUNSEL

*Coughlin & Gerhart (Peter H. Bouman* of counsel), for petitioners in proceedings Nos. 1 and 2.

*Carb, Luria, Glassner, Cook & Kufeld (Mary Jo Reich* of counsel), for petitioner in proceeding No. 3.

*Charles M. Pratt (Edgar K. Byham* of counsel), for New York Power Authority, respondent.

*David E. Blabey (Mark Seidenfeld* of counsel), for Public Service Commission of the State of New York, respondent.

### OPINION OF THE COURT

MIKOLL, J.

On November 19, 1982, respondent Power Authority of the State of New York (PASNY) filed an application pursuant to Public Service Law article VII for a certificate of environmental compatibility and public need to construct and operate approximately 180 miles of 345 kilovolt (kV) transmission facilities from a substation in the Town of Marcy, Oneida County, to a proposed substation in the Town of East Fishkill,

Dutchess County. This project is known as the Marcy-South Project. Facility B-2, also known as the Catskill Bypass, is a 31-mile portion of the Marcy-South project located solely in Delaware and Sullivan Counties.

After the application was filed, preliminary conferences, public statement hearings and formal evidentiary hearings were held. Next, two Administrative Law Judges issued a recommended decision on June 25, 1984. Thereafter, on January 30, 1985 a majority of the Commissioners of respondent Public Service Commission (PSC) issued an opinion and order granting the requested certificate (hereinafter the Certification Order). The Certification Order rejected the finding of the Administrative Law Judges insofar as it rejected the use of the "primary route" and instead certified routing along Facility B-2. The Certification Order determined that construction of the facility was in the public interest and that the proposed line posed no health or safety threats warranting rejection of PASNY's application. The Certification Order also prohibited PASNY from commencing any proceedings under the EDPL and from beginning site preparation or construction before PASNY submitted and obtained approval of an environmental management and construction plan (EM&CP) showing the precise alignment of all structures, access roads and cleared areas.

Subsequently, petitions for rehearing of the Certification Order were filed by agencies and individuals, including certain individual members of petitioner in proceeding No. 1, the Delaware County Citizens Opposed to Powerline Route Alternatives (DCCOPRA), and petitioner in proceeding No. 2, Richard I. Coombe. On May 6, 1985, the PSC denied all of these petitions for rehearing.

On October 16, 1985, a proposed EM&CP for Facility B-2 was submitted. Thereafter, all of DCCOPRA's members, Coombe and petitioners in proceeding No. 3, Lucy Biase and the estate of Paul Biase, Sr. (hereinafter Biase), filed with the PSC objections to the EM&CP for Facility B-2. On March 17, 1986, the PSC issued an order approving the EM&CP for Facility B-2 with certain exceptions. All of the petitioners herein then applied for a rehearing before the PSC of the March 17, 1986 order. In June 1986, the PSC denied all petitions for rehearing.

DCCOPRA, Coombe and Biase each commenced a proceeding in this court on June 20, 1986, June 26, 1986 and July 3,

1986, respectively, pursuant to Public Service Law § 128 seeking to challenge the PSC orders dated January 30, 1985 (the Certification Order), May 6, 1985 (the denial of rehearing on Certification Order), March 17, 1986 (the approval of EM&CP) and the undated order denying petitioners' rehearing petitions. On July 10, 1986, the PSC and PASNY each moved to dismiss paragraphs 20 through 31 of both the DCCOPRA and the Coombe petition on the basis that DCCOPRA and Coombe failed to comply with the 30-day Statute of Limitations contained in Public Service Law § 128 (1) and, therefore, said petitions were untimely. On July 22, 1986, the PSC moved to dismiss paragraphs 22 through 31 of the Biase petition on the ground that, *inter alia,* said portion of the petition challenging the Certification Order was not commenced within the 30-day time limitation of Public Service Law § 128 (1). Lastly, on July 23, 1986, PASNY moved to dismiss paragraphs 21 through 38 of the Biase petition on the same ground.

In opposition to the dismissal motions, petitioners argue that since the Certification Order was contingent on EM&CP approval, it was not final and, therefore, judicial review at that time was inappropriate. Additionally, they contend that without EM&CP approval (Mar. 17, 1986), they could not ascertain the impact on them and/or their property as there was no direct, substantial impact to allow them to commence a proceeding. Petitioners assert that they had 30 days from the PSC order denying their applications for rehearing of the EM&CP approval to commence a proceeding under Public Service Law § 128.

We disagree. The fact that the Certification Order was conditioned on EM&CP approval did not make it nonfinal. The Certification Order went into great detail about where the corridor would be and had very real effects on petitioners. They were definitely on notice that their land might be affected. The purpose of the EM&CP is to inform and minimize site-specific impacts of the line and to respond to landowners' individual concerns. The one-quarter mile deviation allows for these specific concerns to be worked out so as not to cause a detrimental impact on the environment. However, the EM&CP does not change the basic route. These details in construction and precise placement do not render the Certification Order nonfinal. The PSC often approves an EM&CP in segments. If the Certification Order was not final until the EM&CP was approved, the decision to build the line would be final with respect to different parties at different times. This

could then require that the PSC defend the Certification Order in court over and over again, a result contrary to what the Legislature apparently intended.

Petitioners' reliance on *Matter of Upset, Inc. v Public Serv. Commn.* (57 AD2d 208) and *Atwell v Power Auth.* (67 AD2d 365) is misplaced. In *Upset,* the PSC itself required additional evidence before certifying the actual transmission of energy. Further hearings on the environment impact aspect were held. In the instant case, only one Certification Order was issued and further hearings on whether it should be issued were not conducted.

DCCOPRA's and Coombe's assertion that they could not have commenced this proceeding until after the EM&CP was approved for Facility B-2, because they did not know if their land would be affected until then, lacks merit. The bulk of their petitions concerns the routing of the Marcy-South project through Facility B-2, a matter which was the subject of the Certification Order and which had nothing to do with the specifics of the EM&CP. The Biase petition also attacks the route which the PSC set forth in the Certification Order. This is something that could have been challenged long before the EM&CP was approved, yet Biase never even sought a rehearing of the Certification Order.

Thus, since DCCOPRA and Coombe did not commence their proceedings within the 30 days after the PSC denied their applications for rehearing on the Certification Order, paragraphs 20 through 31 of their petitions should be dismissed. Concerning the Biase petition, Public Service Law § 128 (1) provides that "[n]o objection that has not been urged by the party in his application for rehearing before the commission shall be considered by the court". Since Biase never sought a rehearing on the Certification Order, those portions of the Biase petition now seeking review of the order, paragraphs 21 through 38, must be dismissed.

Remaining are paragraph 32 in both the DCCOPRA and Coombe petitions and paragraphs 39 through 45 of the Biase petition. The paragraphs of the Biase petition attack the way the PSC approved the EM&CP, and also challenge the PSC guidelines for EM&CPs as set forth in the Certification Order. Paragraph 32 in both the DCCOPRA and Coombe petitions state that the EM&CP for Facility B-2 does not comport with the specific guidelines for EM&CPs set out in the Certification Order. Those paragraphs of the Biase petition which challenge

the PSC guidelines for EM&CPs as set forth in the Certification Order are really an attack on the Certification Order itself. Since Biase is precluded from making such attack, having failed to timely commence a proceeding pursuant to Public Service Law § 128 (1), said paragraphs are dismissed *sua sponte*.* Paragraph 32 in both the DCCOPRA and Coombe petitions and those paragraphs in the Biase petition challenging the way the PSC approved the EM&CP must also be dismissed since a proceeding solely to review the EM&CP cannot be commenced in this court. Public Service Law article VII does not provide for such a proceeding *(see,* Public Service Law §§ 128, 129).

We have considered the other arguments made by the parties and find them to be without merit.

CASEY, J. P., WEISS, YESAWICH, JR., and LEVINE, JJ., concur.

Motions granted, without costs, and petitions dismissed.

---

* In June 1986, proceedings pursuant to Public Service Law § 128 were commenced in the Appellate Division, Second Department, challenging the issuance of the Certification Order. The Second Department dismissed the proceedings on the merits, thereby confirming the PSC's issuance of the Certification Order *(Matter of Delaney v Public Serv. Commn.,* — AD2d —).